THE LAND FINANCE CORPORATION *vs.* JOHN MENZIES.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 7th—decided April 26th, 1932.

*Robert J. Woodruff,* with whom, on the brief, was *Louis Shafer,* for the appellant (defendant).

*Arthur Klein,* for the appellee (plaintiff).

AVERY, J. The appellant in this case assigns error in the refusal of the court to set aside the verdict in favor of the plaintiff, in refusing to charge as re-

quested, and also in the charge as delivered, and in certain rulings on evidence.

On the trial of this case before the jury, the plaintiff, a New York corporation engaged in the business of financing commercial firms through trade acceptances and like negotiable paper, claimed to have established from the evidence, the following facts: On April 16th, 1925, the plaintiff and the Autocrat Sales and Distributing Corporation entered into a written contract whereby, among other things, the plaintiff agreed to purchase from it trade acceptances by advancing eighty per cent of the face amount of such acceptances and retaining twenty per cent until they were paid in full; thereupon to pay it the balances, less certain charges. Thereafter, and up to June 25th, 1925, the plaintiff, in accordance with its contract, purchased from the Autocrat Sales and Distributing Corporation negotiable paper amounting to approximately $60,000. On June 8th, 1925, plaintiff purchased twelve trade acceptances from it which were by it indorsed to the plaintiff for value. Among these were three dated May 20th, 1925, executed by the defendant, John Menzies, as acceptor, and drawn by the Autocrat Sales and Distributing Corporation, requiring the defendant to pay to the order of Autocrat Sales and Distributing Corporation in sixty, ninety, and one hundred and twenty days, respectively, after date the sum of $229 each at the Second National Bank of New Haven, Connecticut. July 20th, 1925, the first acceptance became payable and was duly presented at the bank for payment, but the defendant refused to pay the same and ordered payment stopped by the bank, and requested it not to pay the other two acceptances when due, claiming that the signature of the defendant on each of the acceptances was a forgery. Thereafter, on their respective due dates, the

remaining two acceptances were duly presented at the bank, and, in each instance, payment was refused at the direction of the defendant. The plaintiff was the bona fide holder and owner in due course of the three trade acceptances, which were past due and unpaid at the time of the trial.

The defendant, a plumbing and heating contractor, doing business in New Haven, claimed to have proved, by the evidence, these facts: About May 26th, 1925, a man, representing himself to be an agent of the Autocrat Sales and Distributing Corporation of New York City, called upon the defendant at his place of business in New Haven, and represented to him that the Autocrat Sales and Distributing Corporation was the manufacturer of a certain oil burner for installation in furnaces, the safest, most efficient and most economical burner for household use. He exhibited to the defendant a small model thereof described as a "Kerrihard" burner, and being advised by the defendant that no oil burner could be installed in New Haven unless approved by the Fire Marshal and a permit issued therefor, the agent left defendant's office, returning about an hour later on the same day, and stated that the Fire Marshal had approved the oil burner. Thereupon, the defendant signed a printed contract, wherein he agreed to purchase certain of the burners upon the terms stated in the contract. The defendant specifically denied signing the three trade acceptances in suit.

The uncontradicted evidence in the case having shown that the plaintiff was a bona fide holder for value of the three trade acceptances, which were in form of negotiable bills of exchange, the only issue before the jury for its consideration was whether or not the signature of the defendant on the acceptances was genuine, as claimed by the plaintiff, or a forgery, as claimed by the defendant. At the trial, the plaintiff

supported its claim that the signature on the acceptances was genuine by the testimony of three expert witnesses who, after comparing the signature upon the acceptances with admitted signatures of the defendant on documents in evidence, pronounced the signature upon the trade acceptances the genuine signature of the defendant. The defendant supported his defense by his own testimony, that of his son and of an expert who pronounced the signature upon the trade acceptances not that of the defendant but a skilled forgery. In this state of the evidence, a pure question of fact was presented for the jury's consideration, and the jury, by their verdict for the plaintiff to recover the amount of the acceptances with interest to the date of trial, having necessarily found that the documents in question were genuine, the court did not err in refusing to set aside the verdict.

The defendant requested the court to charge the jury: (1) That the evidence of the plaintiff's experts was purely circumstantial, to be received with great caution and not to be considered as decisive unless corroborated by the evidence of one very familiar with the defendant's signature; or who had seen the defendant sign his name on various occasions; and (2) that the value of testimony as to handwriting depends on actual familiarity therewith, whether gained from seeing a person write often, or seeing often what he wrote. The court properly refused to charge in accordance with these requests. In this State, it is not necessary, although it may be in some cases helpful, that an expert on handwriting should have actually seen the subject write. The expert makes his comparison of a disputed signature with signatures in evidence, the genuineness of which is either admitted or proved. *Tyler* v. *Todd,* 36 Conn. 218, 222. The court instructed the jury that in weighing and consid-

ering the testimony of experts, and determining the weight to be given to it, the jury should apply the same rules as to any other witness so far as relates to the interest, bias or prejudice, appearance and demeanor of the witness upon the stand, his frankness, candor, etc.; and, in addition thereto, the value to be attached to such testimony would depend, among other things, upon the actual skill possessed by the expert, the experience and training he had had, whether this experience and training had been long or short, practical or theoretical, and, under the circumstances, whether reasonably the expert would have acquired a skill peculiar or greater than that of others. The jury was further instructed to consider what opportunity the expert had to analyze and study the genuine handwriting and compare it with the disputed; whether the time had been adequate and the opportunity sufficient; whether the expert's study had been confined to a limited number of determined genuine handwritings; whether or not opportunity had been afforded to see the subject actually write; whether the witness advanced a reasonable and rational basis in support of the opinion expressed; and whether or not from the testimony it appeared that the writings in dispute had been examined with skill, intelligence and candor, or the contrary. Under the claims of proof of the parties, the court's instructions were adequate, and prejudicial error cannot be predicated by the defendant upon the charge as delivered on this subject.

Assignments of error relating to the admission of the testimony of the expert witnesses called by the plaintiff are without merit. The objections were based upon the length of time and opportunity which the witnesses had to compare the genuine and disputed writings, and the objections went to the weight rather than to the admissibility of the testimony. The evi-

dence of Frederick Menzies as to conversations with the agents of the Autocrat Sales and Distributing Corporation with reference to the transactions between the defendant and that company, claiming to show fraud by that company on the defendant, was properly excluded, as it was not alleged in the substitute answer that the plaintiff had any knowledge of any such fraud, or had participated in any way therein; nor was any evidence offered to that effect. The uncontradicted evidence having shown that the plaintiff was the holder in due course of these negotiable trade acceptances, fraud in the issuance thereof, of which the plaintiff had no notice, would not constitute a defense as against it. General Statutes, § 4374; *Bissell* v. *Dickerson*, 64 Conn. 61, 73, 29 Atl. 226. The other rulings on evidence do not require discussion.

There is no error.

In this opinion the other judges concurred.