FUNDING CONSULTANTS, INC. *v.* AETNA CASUALTY
AND SURETY COMPANY ET AL.

SPEZIALE, C. J., PETERS, HEALEY, GRILLO and COVELLO, JS.

Argued May 11—decision released July 27, 1982

*David J. Heinlein,* with whom, on the brief, was
*Robert L. Hirtle, Jr.,* for the appellant (defendant
Benjamin C. Preisner).

*Paul M. Sabetta,* for the appellee (plaintiff).

PETERS, J. In this suit on a promissory note, the dispositive issue is whether a maker of a note may introduce expert testimony to challenge the good faith of a person seeking to enforce the note as a holder in due course. The plaintiff, Funding Consultants, Inc., brought an action, initially only against the defendant Aetna Casualty and Surety Co., Inc., but ultimately also against the defendant Benjamin C. Preisner,[1] as co-makers of a promissory note in the amount of $68,000. Aetna Casualty, in the interim, had impleaded Preisner by a third party complaint alleging that Aetna Casualty as surety was entitled to indemnification from Preisner if Aetna Casualty were held liable to Funding Consultants. See General Statutes § 52-102a; Practice Book § 117. After a trial to a jury, judgments were rendered in favor of the plaintiff against both defendants, and in favor of the third party plaintiff against the third party defendant. Only the appeal of Preisner as defendant and third party defendant is being pursued in this court.[2]

[1] The substituted complaint is, on its face, ambiguous in its designation of the parties defendant. In its opening paragraph it describes only Aetna Casualty as a defendant, while in another paragraph it alleges notification of "the defendants." The record as a whole, however, makes it clear that the substituted complaint made Preisner a co-defendant. The parties at trial and on this appeal have treated Preisner as a co-defendant, and the judgment rendered on the plaintiff's complaint awards the plaintiff a recovery against "the defendants" Aetna Casualty and Preisner. Preisner's status as co-defendant is not affected by the fact that he was made a party by the plaintiff pursuant to the provisions of General Statutes § 52-102a and Practice Book § 117.

[2] The defendant Aetna Casualty took a timely appeal from the judgment rendered against it, but withdrew that appeal before this case was heard for oral argument. Insofar as Preisner is appealing from the judgment against him on the substituted complaint, his status as co-defendant allows pursuit of his appeal even though Aetna Casualty has withdrawn. The extent to which Preisner is appealing from the judgment on the third party complaint is more perplexing. No separate issue has been raised in the briefs con-

The present action is a suit on a promissory note which was given to Paul King, Jr. in connection with the 1974 sale of the Paul King, Jr. Insurance Company to the defendant Preisner. On this note, hereinafter the Preisner note, Preisner and Aetna Casualty were co-makers, although Aetna Casualty's status was that of an accommodation party for Preisner. The Preisner note was a $68,000 noninterest bearing negotiable instrument calling for four equal instalments to be paid annually beginning on November 1, 1975, and ending on November 1, 1978.

King sold the Preisner note to the plaintiff Funding Consultants, Inc. on January 18, 1975, for $5000 cash and a promissory note. This note, hereinafter the Funding note, was a $35,000 noninterest bearing negotiable instrument calling for four equal instalments to be paid at bi-monthly intervals beginning on March 20, 1975, and ending on September 20, 1975.

The defendant Preisner, after formal demand, refused to make any payments on the Preisner note because, he alleged, the execution of the note had been induced by fraudulent misrepresentations about the financial condition of the Paul King, Jr. Insurance Company. The plaintiff Funding Consultants thereupon, on December 1, 1975, in reliance upon an acceleration clause contained in the

---

cerning Preisner's obligation to indemnify Aetna Casualty. At the trial, the parties stipulated that any judgment against Aetna Casualty would also be a judgment against Preisner. We will assume, for the purposes of this appeal, that our resolution of the issues arising pursuant to the underlying complaint will serve to resolve the appeal concerning the third party complaint.

Preisner note, declared the whole amount of that note to be then due and payable. This litigation ensued.[3]

At the trial, the plaintiff sought to recover on the Preisner note as a holder in due course. Only a holder in due course may enforce a negotiable instrument without regard to the maker's assertion of a personal defense such as fraud in the inducement. General Statutes § 42a-3-305 (2); cf. *Land Finance Corporation* v. *Menzies*, 114 Conn. 694, 699, 160 A. 168 (1932) (under pre-Uniform Commercial Code law); see E. Peters, A Negotiable Instruments Primer (2d Ed. 1974) § I, pp. 33-34; White & Summers, Uniform Commercial Code (2d Ed. 1980) § 14-9. Evidence of the existence of a personal defense does, however, shift to the holder of the instrument the burden of proving his due course status. General Statutes § 42a-3-307 (3); cf. *Hartford National Bank & Trust Co.* v. *Credenza*, 119 Conn. 368, 370, 177 A. 132 (1935) (under pre-Uniform Commercial Code law); see Peters, op. cit., § J, p. 34. That burden requires the holder to prove his taking of the instrument "(a) for value; and (b) in good faith; and (c) without notice that it is over-

---

[3] It is of passing interest to note that the record reveals that the Funding note equally fell into immediate default. On March 20, 1975, before the due date of the first instalment of the Preisner note, the plaintiff informed King that the payment schedule on the Funding note was being readjusted to coincide with the payment schedule on the Preisner note, so that "[i]f payment is not received on your note, no payments will be made by Funding Consultants, Inc." The Funding note in turn was assigned by King to five insurance companies to whom he was indebted. These insurance companies subsequently recovered a judgment on the Funding note against the plaintiff in the amount of $48,071.47. *Middlesex Mutual Ins. Co.* v. *Funding Consultants, Inc.*, Superior Court, Judicial District of New Haven, Docket No. 145988. In the present litigation, in order to collect on that judgment, the five insurance companies were permitted to intervene as additional parties plaintiff.

due or has been dishonored or of any defense against or claim to it on the part of any person." General Statutes § 42a-3-302; cf. *Parsons* v. *Utica Cement Mfg. Co.*, 82 Conn. 333, 339, 73 A. 785 (1909) (under pre-Uniform Commercial Code law); see Peters, loc. cit.; White & Summers, op. cit., § 14-6.

In order to establish its due course status, the plaintiff relied on the testimony of its president, Richard R. Splain. When the good faith of the plaintiff's purchase was put into issue, Splain testified that he had little knowledge about or experience in the purchase of negotiable instruments.[4] The defendant sought to counter this testimony by offering, as an expert witness, Michael Schaeffer of the Connecticut Bank & Trust Company to testify that the plaintiff had given inadequate consideration for its purchase of the Preisner note. Such testimony would furnish some evidence, according to the defendant, that Splain had testified untruthfully about the good faith of the plaintiff's purchase. The plaintiff objected to admission of the testimony as irrelevant and prejudicial. After a hearing, the trial court sustained the plaintiff's objection on the ground of prejudice.

The case was submitted to the jury with one special interrogatory. In response to that interrogatory, the jury found the plaintiff to be a holder in

---

[4] Since the parties have certified only part of the transcript to this court, we do not know what other evidence to prove or to disprove the plaintiff's good faith was before the jury. Although the plaintiff's default on its own negotiable promissory note would not impair its capacity to be a holder for value; see General Statutes § 42a-3-303 (c); its early repudiation of that note might be some indication of notice of a defense on the Preisner note.

due course with respect to the Preisner note. The defendant's appeal has assigned the exclusion of the expert testimony as error.[5]

The disagreement of the parties on this appeal is a narrow one. On the one hand, the defendant concedes that the standard of good faith under the Uniform Commercial Code is, as it was under the prior Negotiable Instruments Law, a subjective standard. "Good faith," as used in General Statutes § 42a-3-302 (1) (b), is defined in General Statutes § 42a-1-201 (19) as "honesty in fact in the conduct or transaction concerned." Both the language of other sections of the Code[6] and the Code's drafting history[7] incontrovertibly demonstrate that this

---

[5] In the alternative, the defendant has also assigned as error a procedural irregularity in the amendment of the jury's verdict.

[6] Compare, in Article 3, General Statutes § 42a-3-406, which requires a payor to pay an instrument "in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." Compare, in Article 2, General Statutes § 42a-2-103 (1) (b), which requires a merchant to satisfy a standard of good faith which means "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Good faith is similarly elaborated to include not only honesty in fact but also observance of reasonable commercial standards in provisions of Articles 7 and 8 concerning a bailee's dealings with documents of title; General Statutes § 42a-7-404; and an agent's dealings with investment securities. General Statutes § 42a-8-318. Since the recurrent insistence, in these other sections of the Uniform Commercial Code, on the additional requirement of "observance of reasonable commercial standards" cannot be disregarded as surplusage, good faith alone cannot properly be read to include such a requirement.

[7] The Uniform Commercial Code, although officially promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws in 1951, continued thereafter to undergo drafting revisions. In 1952, the proposed Uniform Commercial Code required in § 3-302 (1) (b) that a holder in due course take a negotiable instrument "in good faith including observance of the reasonable commercial standards of any business in which the holder may be engaged." American Law Institute, Uniform Commercial Code, 1952 Official Text Edition. Four years

standard is one that imposes no duty of due care on the holder. The test is honesty in fact rather than negligence. See, e.g., *Industrial National Bank of Rhode Island* v. *Leo's Used Car Exchange, Inc.,* 362 Mass. 797, 801, 291 N.E.2d 603 (1973); *Breslin* v. *New Jersey Investors, Inc.,* 70 N.J. 466, 471, 361 A.2d 1 (1976); *Chemical Bank of Rochester* v. *Haskell,* 51 N.Y.2d 85, 91-92, 411 N.E.2d 1339 (1980); *Community Bank* v. *Ell,* 278 Or. 417, 427–28, 564 P.2d 685 (1977). On the other hand, the plaintiff does not dispute that application of this test calls for the factfinder to determine the inferences appropriately to be drawn from all of the evidence, including testimony "regarding the relationship between the plaintiff and the [transferor of the negotiable instrument], and the circumstances surrounding the purchase of this paper . . . ." *Williams & Co.* v. *Wiltz,* 106 Conn. 147, 152, 137 A. 759 (1927). A defendant who wishes to overcome the plaintiff's own testimony in support of its good faith perforce must introduce evidence to contradict the plaintiff's assertions of honesty in fact. See *Favors* v. *Yaffe,* 605 S.W.2d 342, 345 (Tex. Civ. App. 1980).

The issue that does divide the parties, here as in the trial court, is what evidence is admissible to test the holder's subjective good faith. In order to decide whether a holder of an instrument acted in good faith, the trier of fact must determine the intent or state of mind of the party concerned.

later, the language "including . . . engaged" was deleted, with a comment that the intent of the deletion was "to make clear that the doctrine of an objective standard of good faith, exemplified by the case of Gill v. Cubitt, 3 B & C 466 (1824), is not intended to be incorporated in Article 3." American Law Institute, Uniform Commercial Code, 1956 Recommendations, p. 103; see White & Summers, Uniform Commercial Code (2d Ed. 1980) § 14-6.

*Breslin* v. *New Jersey Investors, Inc.,* supra; *Community Bank* v. *Ell,* supra. As in other determinations concerning intent, the trier is entitled to consider not only the testimony of the interested party but also evidence of surrounding circumstances that inferentially illuminate his honesty in fact in view of his actual knowledge. "Although mere negligence or failure to make the inquiries which a reasonably prudent person would make does not of itself amount to bad faith, if a party fails to make an inquiry for the purpose of remaining ignorant of facts which he believes or fears would disclose a defect in the transaction, he may be found to have acted in bad faith." *Community Bank* v. *Ell,* supra, 428; *Hollywood National Bank* v. *International Business Machines Corporation,* 38 Cal. App. 3d 607, 614–15, 113 Cal. Rptr. 494 (1974); *Mid-Continent National Bank* v. *Bank of Independence,* 523 S.W.2d 569, 574–75 (Mo. App. 1975); *General Investment Corporation* v. *Angelini,* 58 N.J. 396, 403–404, 278 A.2d 193 (1971). Similarly, if a party pays for an instrument an amount far less than its face value, such evidence is a factor that a trier may reasonably consider in weighing whether a purchase was made in good faith. The sale of an instrument at a substantial discount may in fact have alerted a prospective purchaser to a possible defense to which he may not wilfully close his eyes. See *United States Finance Co.* v. *Jones,* 229 So. 2d 495, 498 (Ala. 1969); *Stewart* v. *Thornton,* 116 Ariz. 107, 109, 568 P.2d 414 (1977); *Williams & Co.* v. *Wiltz,* 106 Conn. 147, 150, 137 A. 759 (1927) (under pre-Uniform Commercial Code law); *Security Central National Bank* v. *Williams,* 52 Ohio App. 2d 175, 179, 368 N.E.2d 1264 (1976); 2 F. Hart & W. Willier, Commercial Paper under the Uniform

Commercial Code § 11.04, pp. 11-21 through 11-22 (1982). We therefore hold that the defendant was entitled to introduce evidence in this case to show that there was such inadequacy of consideration that this factor, among others, should have been weighed by the jury in its determination of the plaintiff's good faith.[8]

Even if evidence of inadequacy of consideration is generally admissible, the question still remains whether the particular evidence offered by this defendant was sufficiently probative so that it should not have been excluded. The plaintiff had bought a $68,000 noninterest bearing note. The expert testimony was offered by the defendant to show what a commercial bank would have paid for the Preisner note and what the effective rate of return on the plaintiff's investment would have been. It is not an answer to this offer of proof that the plaintiff's president had testified about his inexperience with the purchase of negotiable paper and his ignorance of the practices and procedures of commercial banks. The jury might have chosen to disregard some or all of this testimony. The expert's evidence would have provided the jury with some basis for assessing the present value of both the Preisner note and the Funding note. It is not unreasonable

---

[8] We note that other courts have critically examined allegations of good faith, especially when the holder of a promissory note seeks to enforce that note against a consumer. See *Unico* v. *Owen*, 50 N.J. 101, 116, 232 A.2d 405 (1967); Gilmore, "The Good Faith Purchase Idea and the Uniform Commercial Code: Confessions of a Repentant Draftsman," 15 Ga. L. Rev. 605, 619 (1981); White & Summers, Uniform Commercial Code (2d Ed. 1980) § 14-8. Although the present transaction does not involve a consumer debtor, it does involve the unitary purchase of a negotiable promissory note rather than the commercial transfer of large numbers of banking items such as checks. Cf. Gilmore, "Formalism and the Law of Negotiable Instruments," 13 Creighton L. Rev. 441 (1979).

to offer a lay jury expert assistance in the proper calculation of values that are not obvious on the face of the instruments to be compared. The proffered evidence was relevant because it would have enabled the jury to make a more accurate assessment of whether the plaintiff took the Preisner note in good faith.

The trial court's decision to exclude the expert testimony impliedly agreed with the defendant that the testimony would have been relevant since the court made its determination on the ground that the testimony was too prejudicial to be admissible. The only basis advanced by the plaintiff for the finding of prejudice is the argument that evidence about mathematical projections by a commercial bank would unfairly bring into play the objective criteria of good faith which the Uniform Commercial Code has repudiated. As we have noted above, there is no inherent inconsistency between a subjective standard of good faith and a reasonable inquiry into the actual known circumstances surrounding a purchase of negotiable paper. The price actually paid, the present value of the instrument actually bought, are elements which may be considered in determining a holder's good faith. Although in most instances admission of expert testimony and questions of relevancy and prejudice rest within the sound discretion of the trial court; *Going* v. *Pagani*, 172 Conn. 29, 34-35, 372 A.2d 516 (1976); *Katsetos* v. *Nolan*, 170 Conn. 637, 651-52, 368 A.2d 172 (1976); in this case the court's action was clearly erroneous. Because exclusion of the expert testimony kept admissible evidence from the jury, the defendant is entitled to a new trial.

Having decided that the trial court's evidentiary ruling requires a new trial on the merits, we need

not address the defendant's alternate ground of appeal. That issue concerned an alleged procedural irregularity in the formal amendment of the jury's verdict. Since such an irregularity is unlikely to recur on retrial, we need not consider its consequences.

There is error, the judgment is set aside, and the case is remanded for a new trial in accordance with this opinion.

In this opinion the other judges concurred.