K. A. THOMPSON ELECTRIC COMPANY, INC. *v.*
WESCO, INC.
(9927)

FOTI, LANDAU and CRETELLA, Js.

Argued January 9—decision released March 17, 1992

*Kerry M. Wisser,* with whom was *Jennifer Jaff,* for the appellant (plaintiff).

*Duncan Ross MacKay,* with whom was *Rhonda J. Tobin,* for the appellee (defendant).

FOTI, J. The plaintiff appeals from the judgment rendered by the trial court for the defendant on the plaintiff's complaint for breach of contract.[1] The plaintiff claims that the trial court improperly (1) found a condition precedent to the contract, (2) found that the defendant had made reasonable efforts to secure required approval, (3) found the contract not binding, and (4) failed to apply General Statutes §§ 42a-2-315 and 42a-2-712. We affirm the judgment.

The plaintiff, a subcontractor, commenced this action for breach of contract, alleging that the defendant supplier had failed to submit shop drawings and to deliver

---

[1] The court also rendered judgment for the defendant on its counterclaim awarding it $49,066.01. The appeal is taken from the judgment rendered for the defendant on the plaintiff's claim.

pumps acceptable to engineers of a project in accordance with the provisions of a contract between the parties. The defendant filed a counterclaim seeking to recover the price of certain equipment sold to the plaintiff. The plaintiff and the defendant claimed setoffs in the complaint and counterclaim, respectively.

The court found the following facts. In 1986, the plaintiff, an electrical contracting company, submitted a bid to the general contractor, Associated Construction Company (Associated), to supply pumps and the pumping control system for a water pollution abatement project in New Haven. Associated's specifications for the four raw wastewater pumps, § 16910, subsections 2.01 and 2.02, required 400 horsepower motors, having adjustable speed power drives with current source converters and power factor correction capacitors. In August, 1986, the defendant circulated its quote for the adjustable speed drives and process control panels to the plaintiff and other electrical contractors bidding on the project. The quote stated that the drives were controlled by its Accutron 300 controllers, which were specified as being adjustable voltage, rather than current source converters, and did not have power correction capacitors.

After obtaining quotes from other suppliers, including some in the range of $300,000 to $400,000, the plaintiff used the defendant's quote in making its bid to Associated. Associated used the bid in its quote and was awarded a contract. Thereafter, the plaintiff and Associated entered into a contract in March, 1987. On May 13, 1987, the defendant made a firm quote to the plaintiff for four 400 horsepower drives and one process control panel, "per 16910, §§ 2.01 and 2.02," for $196,500, but in the technical comments of the quote noted that it was "quoting adjustable voltage controller in lieu of current controller. Power correction capacitors are not required in voltage controller design."

The plaintiff's president, Keith Thompson, met several times with the defendant's representatives and was assured that the defendant's pumps would meet the intent and the performance requirements of the specifications of the project. Relying on these representations, the plaintiff submitted a purchase order for the pumps and control panel to the defendant at the price quoted. Thereafter, the defendant signed a purchase order on its own form to the same effect. Both orders provided that the defendant agreed to be bound by all of the terms and conditions imposed on the plaintiff by the project specifications. Both orders also included the following language, which was drafted by the plaintiff: "This order is contingent upon the [defendant's] providing all shop drawings and other engineering details required by said Section [16910] and their acceptance by the architects, engineers, planners and construction supervisors on the above job, CE Maguire, Inc., One Court Street, New Britain, CT."

Over the next several months, the defendant submitted a series of shop drawings of the equipment referred to in the purchase order, all of which were rejected by CE Maguire, Inc. Conferences were held in an attempt to convince CE Maguire that the defendant's Accutron 300 with adjustable voltage controller and without power capacitors could perform as well as or better than the pumps required by the project specifications. The defendant never provided backup technical information and empirical data to substantiate its claim that the voltage source drives would comply with the efficiency standards required in the specifications. The efficiency rating of the drives was crucial; if the drives used excess electricity, the utility company supplying the electricity to operate the pollution abatement machinery would assess the city of New Haven an additional charge and penalties.

After the final rejection, Associated demanded that the plaintiff supply the equipment required by the specifications or Associated would hold the plaintiff in breach of contract. Under that threat, the plaintiff contracted with another manufacturer to supply the proper equipment for $304,475. The plaintiff then brought this breach of contract action against the defendant, seeking damages of $107,975, the difference between the subsequent contract price of $304,475 and the defendant's quoted price of $196,500.

In rendering judgment for the defendant, the court found that the contract between the parties was contingent on the performance of a condition precedent that required approval of the proposed equipment by the project engineers, and that because that condition precedent was not fulfilled, the contract never became binding on the parties. The court further found that the defendant had made reasonable efforts to fulfill the condition precedent.

The plaintiff first claims that the terms of the contract did not constitute a condition precedent, but rather defined the terms and standard for performance. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Citations omitted.) *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951). In searching for the intent of the parties as expressed in

a contract, the court must consider all relevant provisions of the contract together; *Bialowans* v. *Minor,* 209 Conn. 212, 217, 550 A.2d 637 (1988); the contract should be read in light of the circumstances surrounding the execution of the instrument. *Christophersen* v. *Blount,* 216 Conn. 509, 512, 582 A.2d 460 (1990). A contract is to be given effect according to its terms where the language is clear and unambiguous. *F & W Welding Service, Inc.* v. *ADL Contracting Corporation,* 217 Conn. 507, 517, 587 A.2d 92 (1991).

The trial court found a condition precedent from the language of the contract itself, the circumstances surrounding the execution of the contract, as well as the intent of the parties. The court gave particular emphasis to the words "This order is contingent upon" to conclude as it did. The court further examined the circumstances surrounding the purchase order. The court specifically found that the "[d]efendant had clearly stated in its first communication in August 1986, referring specifically to Section 16910 . . . that its Accutron 300 was an adjustable voltage controller and did not have the power correction capacitors. In these two particulars, the Accutron 300 deviated from the specifications. Both the plaintiff and the defendant knew this. The plaintiff did not want to be bound to purchase defendant's drives unless they were acceptable to the project engineer. Similarly, the defendant knew it had no sale of its drives if they were not so acceptable. Thus, the contingency clause served the interests and expressed the intent of both parties: if the drives were not approved by the project engineers, there was no purchase order and neither party was bound." It was also clear to both parties that the defendant would be providing an alternative to the specifications, and the contingency clause allowed for the risk to be shared by both parties.

The court recognized that it was the plaintiff who had drafted the contingency clause, and had accepted the defendant's quote because it was almost half the amount of the other bids. Further, the plaintiff knew that it was an alternate design proposal and that at least one other bid would meet the specifications exactly.

The trial court reasonably concluded that this clause was an unfulfilled condition precedent, which made the contract not binding on either party. The court based its conclusion on the terms of the contract, the factual determination as to the intent of the parties and the surrounding circumstances. We find no legal basis for disturbing the court's conclusion, which is based on a mixed question of fact and law.[2] A factual finding, or one of mixed fact and law, may be rejected by this court only if it is clearly erroneous. *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 153–54, 527 A.2d 679 (1987). In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* 213 Conn. 486, 498, 569 A.2d 32 (1990). We must defer to the trial court's factfinding, and such a determination will not be disturbed on appeal if there is sufficient evidence to support the finding. *Campisano* v. *Nardi,* 212 Conn. 282, 286, 562 A.2d 1 (1989).

The plaintiff next challenges the court's finding that the defendant had made a reasonable effort to secure approval, a requirement implied by the contingency clause. The plaintiff argues that the applicable standard should be a good faith standard rather than the

---

[2] In this case, whether the contract contained an unfulfilled precedent, based on the terms of the agreement and the parties' intent, was a mixed question of fact and law. In *D'Addario* v. *D'Addario,* 26 Conn. App. 795, 603 A.2d 1199 (1992), whether a *deed* contained a condition precedent was a question of law.

reasonable efforts standard employed by the court, and that neither standard is factually supported by the evidence. We do not agree.

The difference between the good faith and reasonable efforts standards is the difference between a subjective and an objective standard. Good faith is a subjective standard involving a determination of the intent or state of mind of the party concerned, taking into account the actual knowledge of the person as well as that person's motives. *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, 187 Conn. 637, 642–44, 447 A.2d 1163 (1982). "Reasonableness, on the other hand, is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill." *Phillipe* v. *Thomas*, 3 Conn. App. 471, 475, 489 A.2d 1056 (1985).

The test in contracts, as in tort cases, is external not subjective; it asks how a person of ordinary prudence in such a situation would have behaved, not how the defendant in fact did behave. *Murphy* v. *Soracco,* 174 Conn. 165, 168, 383 A.2d 1350 (1978). Whether the plaintiff's actions constituted reasonable efforts to satisfy the contractual condition is a factual determination for the trial court. *Lach* v. *Cahill,* supra, 422.

We agree that the contingency clause implied that the defendant would make reasonable efforts to secure the approval of the project engineers. See *Webb* v. *Moeller,* 87 Conn. 138, 141, 87 A. 277 (1913). We conclude that there was sufficient evidence presented that could form a factual determination of the reasonableness of the defendant's efforts.

The plaintiff next alleges that the trial court improperly held that the defendant's failure to obtain acceptance by the project engineers made the contract not binding on either party. The plaintiff claims that the

condition on performance was not a condition precedent and that the good faith rejection of the plans as submitted does not make the contract not binding. As noted, we do not agree.

As previously discussed, because approval was a condition precedent to the contract, the failure to approve prevented the contract from coming into existence, and made the terms of that document nonbinding on either party. The rejection, whether it be a good faith failure to approve or otherwise, relieves the parties of their contractual obligations.

Finally, the plaintiff alleges that the court improperly refused to apply the Uniform Commercial Code, specifically §§ 42a-2-315 and 42a-2-712. In order for these sections of the Uniform Commercial Code to be applicable, there must first be an enforceable contract. Because the condition precedent to the contract was not fulfilled, no contract existed.

The judgment is affirmed.

In this opinion the other judges concurred.