[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This suit arises out of a dispute between two physicians as to the interpretation of a contract of employment between them, and their respective rights upon termination of their relationship. The plaintiff, Doctor Sanford Benjamin, joined the defendant, Doctor Richard Sheinbaum as the defendant's employee in his gastroenterology practice in July 1987. There was little negotiation over the salary and bonus the plaintiff was to receive, and an employment agreement ("The Agreement") prepared by the defendant's attorney was entered into. The plaintiff was also represented by counsel, and there was I negotiation between CT Page 4255-RRR the two lawyers over the language of the contract before a final i draft was arrived at.
The Agreement was signed May 29, 1987 and the employment relationship began on July 1, 1987. For the first six months, the relationship was uneventful, but in January or February 1988 the defendant confronted the plaintiff with his disappointment in the amount of business the plaintiff was producing. He told the plaintiff that because of that, he didn't believe the Agreement in the second and succeeding years would be acceptable, and he proposed renegotiating it. The plaintiff refused to do so, and the defendant dropped the topic. Shortly thereafter, in February, the defendant's wife was employed by the practice on a part time basis and at market pay, to work in the office acting as a receptionist and to handle collections. The plaintiff raised a question concerning the defendant's wife being paid out of funds of the practice, suggesting that it violated the spirit of the contract. The Agreement indeed contained language prohibiting compensation of members of the defendant's family as an expense of the practice. The defendant claimed that he forgotten about that prohibition but was outraged that his wife could not be paid for her services. The parties referred the issue to their respective lawyers to be worked out, and the defendant's wife discontinued her employment until the problem could be resolved.
At about the same time that these disputes were occurring, the defendant pointed out to the plaintiff that the accounts receivable of the practice generated by work performed by the defendant prior to July 1, 1987, that being the date of the plaintiff's arrival, would not be included in the calculation of net profits upon which the plaintiff's bonus would be based.
Perceiving the deterioration of the relationship, the plaintiff sent a letter to the defendant dated March 26, 1988 giving 90 days notice of the termination of the Agreement. (The Agreement provides for its termination at any time upon 90 days written notice to the other party). On April 14, 1988 the defendant relieved the plaintiff of the obligation of his employment effective immediately, but continued to compensate the plaintiff to the effective date of termination, June 28, 1988 as required by the Agreement.
After the plaintiffs termination notice of March 26, 1988, he had little further contact with the practice or the office, but spent the majority of his time formulating and carrying out plans CT Page 4255-SSS to set himself up in a new office. The Agreement and the relationship did in fact terminate at the end of June 1988.
This lawsuit resolves itself into three main areas of dispute between the parties: (1) whether the net profits of the practice is to include income received during the time of plaintiffs employment but generated by work performed prior to his joining the defendant ("Pre-1987 Receivables"); (2) the method of calculating the accounts receivable existing as of June 30, 1988 ("1988 Receivables") and (3) whether the compensation of the defendant's wife, Patrice Sheinbaum, can be deducted as an expense in calculating net profits for the period the Agreement was in force.
I. PRE-1987 RECEIVABLES
Paragraph 3 of the Agreement contains the language intended to describe the compensation the plaintiff was to receive under the Agreement. His base salary was $50,000.00, but he was also entitled to receive "a bonus equal to one-half of the net profit during the initial one (1 ) year term of this Agreement in excess of ONE HUNDRED FORTY-FOUR THOUSAND ($144,000.00) DOLLARS to Sheinbaum's Practice". See Agreement, Paragraph 3(b). Paragraph 3 is silent as to whether the Pre-1987 Receivables are to be included, when collected in the initial year of the Agreement, in the "net profit" of the practice. The parties agree that if these accounts receivable are not included in the net profit, Sheinbaum's threshold number of $144,000.00 would not be achieved and the plaintiff would be entitled to no bonus, whereas, his would be a substantial bonus if they are included.[1]
The question is not the definition of "accounts receivable" but rather the meaning of "net profit" as used in Paragraph 3(b) and in light of other language in the Agreement. The question of contract interpretation, being a question of the parties' intent, is ordinarily a question of fact. Finley v. Aetna Life andCasualty Co., 202 Conn. 190, 199, 520 A.2d 208 (1987); Bank ofBoston v. Scott Real Estate Inc., 40 Conn. App. 616, 621 (1996). Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. Bank of Boston v. Scott Real Estate, supra 621. The interpretation of a contract term that is not so clear as to render its meaning a matter of law, is a question of fact. Larsenv. Jacobson, 38 Conn. App. 186, 189 (1995). The intention of the parties to a contract is to be determined from the language used, CT Page 4255-TTT interpreted in the light of the situation of the parties and the circumstances connected with the transaction. Ives v.Willamantic, 121 Conn. 408, 411, 185 A. 427 (1938). Interpretation of a contract requires a determination of the intention of the parties as manifested by their words and conduct. Larsen v. Jacobson, supra 190. When an ambiguous term is at issue, the trial court can examine evidence to resolve the question of the parties' intent. Id., 190. Also "the conduct of the parties regarding the terms of the contract is a useful and proper aid to its interpretation." Crowther v. Gerber GarmentTechnology. Inc., 8 Conn. App. 254, 263, 513 A.2d 144 ( 1986) .
The court finds that the term "net profit" as used in Paragraph 3(b) of the Agreement is unclear and ambiguous because it does not resolve the question whether Pre-1987 Receivables are to be included therein. Indeed, the parties in that very Paragraph acknowledge that the "concept of `net profit' as used in the immediately preceding sentence is necessarily vague and subject to multiple interpretations." Thus, the court will examine not only the language of the Agreement, but the words and conduct of the parties and the circumstances of the situation.
Because the parties believed the concept of "net profit" to be vague, they agreed that Sheinbaum would reserve "the exclusive right to determine in his sole discretion the amount of `net profit' and represents that he will exercise good faith in the process. . . ." The plaintiff advances the argument that because the defendant reports his income on a cash basis, the Pre-1987 Receivables collected during the year of employment must be included in net profit.[2] The plaintiff also charges that the defendant did not exercise good faith in determining net profit when he excluded Pre-1987 Receivables therefrom.
The court is not convinced, in light of the conduct of the parties and conflicting provisions of the contract, that the language regarding reporting to the IRS is conclusive as to the parties' intent regarding the method of treatment of accounts receivables for purposes of determining net profit. Indeed, the parties specifically allowed Benjamin to share in accounts receivables at the termination of the Agreement, even though they became income for IRS purposes at a time when the plaintiff was no longer employed, and not otherwise sharing in the net profits. See Agreement, para. 17.
Concerning the "good faith" of the defendant, the plaintiff CT Page 4255-UUU points to the timing of the defendant's comment to the plaintiff concerning his view of the Pre-1987 Receivables as evidence of his bad faith. The fact that these comments came shortly after the defendant expressed his dissatisfaction with the plaintiff's productivity does not rise to the level of proof of bad faith. It has been held that the standard definition of bad faith is the absence of good faith. Buckman v. People Express Inc., 205 Conn. 166,171, 530 A.2d 596 (1987). Bad faith in general implies both actual or constructive fraud or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Habetz v. Condon, 225 Conn. 231, 237, 618 A.2d 501
(1992). Bad faith means more than mere negligence. It involves a dishonest purpose. Funding Consultants Inc. v. Aetna CasualtyInsurity Co., 187 Conn. 637, 644, 447 A .2d 1163 (1982). In this case, the plaintiff has not proven by a preponderance of the evidence that the defendant was possessed of a sinister motive or acted for a dishonest purpose.
The plaintiff also claims that Paragraph 3(c) contains language which mandates the inclusion of Pre-1987 Receivables, when collected, in the net profit of the practice on which his bonus must be based.[3] The court considers it a stretch of logic to interpret that language to mean that the intent of the contract was to include within Sheinbaum's "activities" the practice of his profession prior to the time of the plaintiff's employment. Rather, the clause is more logically intended to include income from other offices of the practice[4] or other activities of Sheinbaum engaged in during the term of plaintiff's employment, such as income from teaching or from engaging in specialties other than gastroenterology, and to exclude such activities as real estate investments.
A number of other factors influences the court to find the intention of the parties was not to include Pre-1987 Receivables in the income of the practice. Paragraph 16 governs the method of calculating the plaintiff's compensation in the second and ensuing years of the Agreement. This Paragraph specifically deletes the original Paragraphs 3(a) and 3(b) and provides:
 "3(a). Beginning with the accounts receivable generated by work performed in the Practice on and after the Thirteenth (13) month of this Agreement. . . ." CT Page 4255-VVV
and goes on to include such receivables in the calculation of "net profit" in which the plaintiff was to share. It demonstrates to the court that the intent of the parties was to allow the plaintiff to participate in accounts receivable income if the receivables were "generated by work performed" during the year of employment in question. This clause was the subject of negotiation between the parties' lawyers prior to the final draft of the Agreement. See Exhibit F. Thus, when the parties wished to address the issue of accounts receivable, they specifically did so. It is agreed by the parties that there was no discussion whatsoever concerning Pre-1987 Receivables before or at the time of executing the Agreement. The court, then, cannot ascribe to the parties, simply by the silence of the Agreement in para. 3 (b) as to the treatment of such receivables, an affirmative intent to include them in the "net profit" of the initial term of the employment.
Likewise, the court is enlightened by Paragraph 15 of the Agreement, which makes provision for the defendant's total disability. If the defendant became totally disabled for more than six months, the clause provides that the parties will then share equally in the "net profit of the Practice including accounts receivable existing at the beginning of the Seventh (7th) month". When the parties wanted to address the issue of accounts receivable as it pertained to "net profit", they knew how to do so in an affirmative fashion.
Evidence was presented by the defendant, uncontradicted by the plaintiff, that at the inception of the employment the ledger book of the Practice was revised by the Practice's accountant to create a separate column derived from Pre-1987 Receivables. Both parties had access to these books and therefore were, or should have reasonably have been, aware that Pre-1987 Receivables were being treated separately from other income. This provides another and strong basis for the court to conclude that the Pre-income. This provides another and strong basis for the court to conclude that the Pre-1987 Receivables were not to be included when collected in the "net profit" for the purpose of calculating the plaintiffs bonus.
The defendant testified that it was never his intention to grant the plaintiff an interest in income derived from work the defendant performed prior to the plaintiff's arrival. On the other hand, the plaintiffs testimony was that he didn't know, at CT Page 4255-WWW the time the of contract signing, what the term "accounts receivable" meant. The court finds the plaintiff's naivete not credible; he had the opportunity at that time to request a share of the fruits of the defendant's earlier labors, but failed to do so.
Furthermore, it does not seem likely that the parties, not knowing how much income the plaintiff would generate in his first year, intended to jeopardize the basic fabric of the Agreement, i.e. the $144,000.00 threshold net income for Doctor Sheinbaum, by including the Pre-1987 Receivables in "net profit". Indeed, it appears that the plaintiff, who produced only a relatively small amount of income during the first six months of his employment, was a direct factor in his failure to become entitled to a bonus under the Agreement.
The court holds that the Pre-1987 Receivables were properly excluded from the calculation of "net profit" under Paragraph 3 (b) of the Agreement.
II. 1988 RECEIVABLES
Paragraph 17 of the Agreement reads as follows:
"17. Treatment of Accounts Receivable in the Event of Termination
 In the event this Agreement is terminated during the initial one year term, Benjamin shall have the right to receive, within 30 days after Sheinbaum receives the funds, one-half of the accounts receivable as of the effective date of termination; provided, however, if Sheinbaum's net profit was less than $144,000.00 during Benjamin's employment (or such lesser sum as provided in Paragraph 3 in the event of termination prior to the end of the initial one-year term), such receipts shall first be reduced by the difference between $144,000.00 (or the applicable lesser amount) and Sheinbaum's net profit during Benjamin's employment".
 The parties are at odds in the treatment of the 1988 Receivables in two respects.
The first is the method of the handling of Pre-1987 Receivables which made up a part of the 1988 Receivables. The court disposed of this issue in Part I by ruling that Pre-1987 Receivables and income received therefrom are not to be included in the net profit of the practice. Thus, they are likewise not includable in the 1988 Receivables. CT Page 4255-XXX
The second item of disagreement as to the 1988 Receivables is the question of certain deductions as expenses of the Practice before the receivables are distributed. During the course of the employment, the defendant had determined with plaintiff's agreement, although not in writing, that a new computer was an essential tool of the Practice. The equipment was ordered and received prior to June 30, 1988, but not paid for until the defendant had terminated plaintiff's employment. Also, a bank loan of $27,000.00 was repaid subsequent to June 30, 1988, the proceeds of which had been used to fund the cash flow of the Practice during the period of employment. The language here is clear and unambiguous, that the plaintiff is entitled to "one-half of the accounts receivable as of the effective date of the termination." There is no room to argue, as does the defendant, that these receivables are to be diminished by any expenses of the Practice. They are only to be reduced, as clearly stated, by the difference between the $144,000.00 and the defendant's net profit during the plaintiff's employment. In addition, and specifically concerning the computer, Paragraph 3(c) prohibits capital expenditures from being deducted as an item of expense without the plaintiff's written approval, which in this case was not obtained. The court views the asset as a capital expenditure irrespective of the accounting method applied.
III. PATRICE SHEINBAUM'S COMPENSATION
In February 1988 the defendant hired his wife to work part time in the office handling collections and acting as a receptionist. The plaintiff questioned whether it was proper under the Agreement for Mrs. Sheinbaum's pay to be deducted as an expense of the office. It was not proper because it violated the express terms of Paragraph 3(c), which states that "compensation or other payments to Sheinbaum or a member of his family" is proscribed. Thus, Patrice Sheinbaum's compensation must be added back to the "net profits" for purposes of calculating the plaintiff s bonus.
IV. CONCLUSION
With respect to Doctor Benjamin's bonus, the parties agree that there was an adjusted profit of $190,577.47, including the Pre-1987 Receivables. There must be added back to that the sum of $5,184.78 representing Patrice Sheinbaum's salary paid during the term of the plaintiffs employment, $3,500.00 for the cost of the CT Page 4255-YYY computer, and $1,336.70 realized from Physician's Health Services (PHS) after June 30, 1988 pertaining to the period July 1, 1987 through June 30, 1988.[5] This amounts to a net profit of $200,578.95 from which the Pre-1987 Receivables of $62,429.72 must be deducted, resulting in a net profit of $138,149.23. This figure being lower than the threshold amount of $144,000.00 (by $5,850.77) required to be achieved before entitling the plaintiff to a bonus, the plaintiff is entitled to no bonus.
The total 1988 receivables collected is $53,007.66. From this, one must deduct $2,274.27 for Pre-1987 Receivables and $5,850.77, representing the "difference between $144,000.00 . . . and Sheinbaum's net profit during Benjamin's employment" pursuant to Paragraph 17 of the Agreement. The 1988 Receivables, thus adjusted, amount to $44,882.62, Benjamin's 50% share of which is $22,441.31. Since it is not disputed that the defendant has paid the plaintiff $11,063.00, the sum of $11,378.31 is owed the plaintiff.
The plaintiff also claims prejudgment interest pursuant to Connecticut General Statutes § 37-3a, double damages, attorney's fees and costs pursuant to Connecticut General Statutes § 31-72, and offer of judgment interest pursuant to Connecticut General Statutes § 52-192a.
Connecticut General Statutes § 87-3a[6] provides for the awarding of interest at 10% per annum on a civil judgment. Interest is an element of damages and whether or not interest should be awarded, is in the province of the trier of fact.Pilato v. Kapur, 22 Conn. App. 282, 283-284, 576 A.2d 1315
(1990). The court may award prejudgment interest, the allowance of which turns "on whether the detention of money is or is not wrongful under the circumstances." Spearhead ConstructionCorporation v. Bianco, 39 Conn. App. 122, 135 (1995); CecioBrothers Inc. v. Feldmann, 161 Conn. 265, 275, 287 A.2d 374
(1971). The court finds that the detention of money was "not wrongful under the circumstances." Spearhead ConstructionCorporation v. Bianco, supra, 39, Conn. App. 135. The debt in issue was not a liquidated amount, as evidenced by the decision of the court which adopted neither parties' calculation of damages. There was also evidence that the defendant paid to the plaintiff the sums he did upon the advice of his attorney. Under all of the circumstances of this case, the awarding of prejudgment interest is not warranted.
The plaintiff's claim for double damages, attorney's fees and CT Page 4255-ZZZ costs pursuant to Connecticut General Statutes § 31-72[7]
is likewise rejected. The statute "provides for a discretionary award of double damages, with costs and reasonable attorney's fees, to employees who are successful in actions against their employers for wages due." Crowther v. Gerber Garment Technology.Inc., 8 Conn. App. 254-264, 513 A.2d 144 (1986). Such awards, however, are "inappropriate in the absence of the trial court's, finding of bad faith, arbitrariness or unreasonableness. . . ."Anderson v. Schieffer, 35 Conn. App. 31, 42, ___ A.2d ___ (1994);Sansone v. Clifford, 219 Conn. 217, 225, 592 A.2d 931 (1991). The defendant's conduct was consistent with a good faith dispute over the entitlement of the plaintiff to wages, based upon the legal interpretation of certain provisions of the Agreement. In addition, the defendant in fact, paid the plaintiff $11,063.00 of the plaintiff's claim to accounts receivables, and did so on the advice of counsel.
Neither is the plaintiff entitled to offer of judgment of interest because the award granted herein is less then the offer of judgment of $50,000.00. See, Connecticut General Statutes § 52-192a(b).
Judgment may enter for the plaintiff in the sum of $11,378.31.
D'ANDREA, J.