[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 10, 1997 CT Page 7437
The principal issue in this action for breach of a contract to pay rent and for damages to the leasehold premises is which parties, the plaintiffs or the defendants, in light of the provisions of General Statutes § 47a-11a, have the burden of proof with respect to the issue of mitigation of damages in a claim for damages for unpaid rent. The court holds that the defendants bear the burden of proof on that issue and that they have not sustained it.
The action having been tried without a jury, the court finds the following facts.[1] On January 29, 1994, the plaintiffs entered into a written agreement to lease a single family house (the house) they owned to the defendants John L. Arminio, Jr., Melissa Kallart (now Melissa Arminio), Philip Hawley and Monique Villano (the defendants). The defendant Edward Villano guaranteed the lessees' obligations under the lease. The term of the lease was from March 1, 1994 to February 28, 1995. The monthly rent was $975.00. The lease provided for a $25.00 late fee in the event rent was paid after the tenth of the month. The lease also provided: "Upon default [tenants] must pay all of the rent for the rest of the term. [Tenants] must also pay all other outstanding charges in accordance with their Agreement. [Tenants] must pay [Landlord's] actual damages, including reasonable legal fees, the costs of re-entering, re-letting, cleaning and repairing the Property and recovering all money which [tenants] owe [the landlord]." The defendants paid a security deposit of $1,950.00.
In August 1994, Hawley visited the plaintiff Maureen DeMatteo and told her that he and Monique Villano, were having difficulties with Arminio and Kallart, and that he and Villano would be vacating the premises. Mrs. DeMatteo indicated to Hawley that this would not pose a problem so long as Arminio and Kallart remained in the house. Hawley and Villano vacated the house in August. The following month, Arminio and Kallart abandoned the house. The plaintiffs claim that the house was left in deplorable condition. The defendants claim that the defendant Arminio returned to the house on October 5, 1994 with her mother and thoroughly cleaned it.
 I
The plaintiffs claim damages equal to the rent for the CT Page 7438 balance of the term of the lease.[2]
General Statutes § 47a-11a provides: "(a) If the tenant abandons the dwelling unit, the landlord shall make reasonable efforts to rent it at a fair rental in mitigation of damages.
"(b) If the landlord fails to use reasonable efforts to rent the dwelling unit at a fair rental, the rental agreement is deemed to be terminated by the landlord as of the date the landlord has notice of the abandonment."
The defendants claim that the plaintiffs are entitled only to rent for the month of September, the last month that Arminio and Kallart occupied the house, because the plaintiffs failed to make reasonable efforts to re-rent the house.[3] The disposition of this issue is dependent, as is so often the case, on which side has the burden of proof, an issue raised by none of the parties. See Pignataro v. Cappiello, Superior Court, judicial district of Fairfield, No. 319646, part II (December 5, 1996).
"In a breach of contract action, the defendant bears the burden of proving that the plaintiff failed to exercise reasonable care to mitigate damages. Preston v. Keith,217 Conn. 12, 20-21 n. 9, 584 A.2d 439 (1991); Newington v. GeneralSanitation Service Co., 196 Conn. 81, 86, 491 A.2d 363 (1985)."Lynch v. Granby Holdings, Inc., 37 Conn. App. 846, 850,658 A.2d 592 (1995), certification improvidently granted, appeal dismissed, 235 Conn. 941, 669 A.2d 578 (1996). While there is a divergence of opinion among the jurisdictions concerning the allocation of the burden of proof on this issue; see Annot., 21 ALR 3d 534 § 12; this is the rule that prevails in Connecticut since the statute does not provide otherwise.
The term "reasonable efforts" calls for the application of an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. (Citation and quotation marks omitted.) K. A. Thompson Electric Co. v. Wesco,Inc., 27 Conn. App. 120, 127, 604 A.2d 828 (1992). "Reasonable efforts mean such efforts as [people] would ordinarily use, apply or exercise in their own business to protect their own rights and interests, and such efforts as are within the realm of reason and logic under the circumstances." Killiany v. Administrator,Unemployment Compensation, 23 Conn. Sup. 188, 191, 179 A.2d 842
(1962); accord, Carr v. Administrator, Unemployment Compensation,
CT Page 743926 Conn. Sup. 336, 337, 223 A.2d 313 (1966). This is a question of fact. Connecticut Light Power Co. v. Costello,161 Conn. 430, 442, 288 A.2d 415 (1971).
The evidence was that after the defendants vacated the house, the plaintiffs hired a person to clean and paint the interior of the house and advertised the house for rent "once" in a local newspaper. They did not retain a real estate agent. However, the evidence is ambiguous as to whether the plaintiffs advertised the rental on one day or for one period. That is, how long the plaintiffs advertised the house as being for rent after the defendants vacated is unclear. This court will not hold that "reasonable efforts", as contemplated by General Statutes §47a-11a, requires that an owner of residential property retain a realtor. The court concludes that the defendants, while casting doubt on whether the plaintiffs exercised reasonable efforts to rent their house, have not sustained their burden of proof on the issue.[4] Therefore, the court awards the plaintiffs damages equal to the amount of the monthly rent. The court's award of damages does not include the late charge since the lease provides for such a charge if rent is paid after the tenth of the month. Here, rent was not paid at all.[5]
 II
The plaintiffs also claim ten dollars damage for two checks given by the defendants which were returned for insufficient funds. The plaintiffs claim $505.50 for the cost of evicting the defendants Arminio and Kallart in the summary process action. This is allowable under the lease. The plaintiffs claim that they had to pay the defendants' $41.00 cablevision bill. Since, under paragraph 8 of the lease, the defendants were to pay their own utilities, this too is allowed.
The plaintiffs claim that the defendants damaged the house as evidenced by the condition in which they abandoned it. General Statutes "§ 47a-11 sets out the tenant's statutory duties, of which the most general is the duty to `not wilfully or negligently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so,'" C.G.S.47a-11(f). The tenant is thus liable for wilful or negligent property damage.
"Since tenant liability must be based on willful or negligent conduct, the mere fact of damage does not necessarily make the CT Page 7440 tenant liable. Proof of property damage requires evidence. The landlord bears the burden of proof on all elements of a damage claim. This means that the landlord must prove that (a) the damage occurred, (b) it exceeded normal wear and tear, and (c) it was caused by the tenant, Kulenski v. Siclari, NH-539 (1990);Stutz v. Andren, SNBR-381 (1992); Lurie v. Baker, NH-499 (1990);Pilagin v. Michalski, H-603 (1985). Damage may be shown either by direct evidence or circumstantially. However, a tenant is not liable for damages that already existed when he moved into the apartment or for damage which occurred after he vacated, Wareckv. Connecticut Chair Car Co., NH-557, 4 CONN. L. RPTR., 6 CSCR 713
(1991); Slaughter v. McFarlane, NH-583 (1992). Similarly, he is not liable for damage caused by persons for whom he is not responsible.
"The tenant is also not liable for what is usually described as `normal' or `reasonable' wear and tear, Dell'Oro v. Kelly,
BR-384 (1992); Grzewinski v. George, H-930 (1989); Opinion of theAttorney General, 6 CLT #38, p. 19 (1980). The determination of what is wear and tear, as distinct from what is property damage, is heavily dependent on the facts of the particular case; but in general it refers to deterioration of or damage to the property which can be expected to occur from normal usage. For example, the tenant is not liable for wear to a landlord-provided carpet which reflects normal usage of a rug. On the other hand, the tenant may be liable for the cost of cleaning a rug which has become urine-stained because of the tenant's dog, Toczydlowski v.Nicolaedis, NH-223 (1984).
"Wear and tear also includes normal repainting and cleaning which occur at the end of a tenancy. The tenant is not liable for nail or pin holes in a plaster wall which would ordinarily be spackled as part of a routine repainting, Bronzi v. Barone, H-533 (1984); Pilagin v. Michalski, H-603 (1985). Each claim must be evaluated on its own merits, in light of the general principle that some wear and tear is inevitable in rental property.
"The landlord must also establish sufficient evidence of the amount of the damage to remove a judgment from the area of speculation. This will not ordinarily require expert testimony or appraisals, but it does require the presentation of some evidence from which a court can make a reasonable estimate of the amount to be awarded, Clarke v. Mele, SNBR-372 (1992); Collazo v. Dias,
NH-555, 5 CONN. L. RPTR. 59 (1991). CT Page 7441
"Property damage may be measured by repair cost or by value, as appropriate. Replacement cost is not usually allowed. Thus, if a tenant has destroyed or removed a landlord-provided carpet, the tenant's liability must be adjusted for the age and condition of the carpet, since the tenant is liable only for lost value, Nitchv. Lavoy-Alaimo, H-977 (1992); Bonito v. Lawrence, NH-576 (1992).
"The dollar value of damage may be shown by paid bills or estimates, DiNapoli v. Doudera, 28 Conn. App. 108, 609 A.2d 1061
(1992), Wyatt v. Ghosh, SNBR-366 (1992), but the courts have held that paid bills are more credible. Evidence that the apartment was subsequently rented to another tenant without repairs being made may reduce the credibility of a claim that damage occurred or that it was of substantial impact, Dell'Oro v. Kelly, SNBR-384 (1992). If damage is repaired as part of a larger repair or improvement job, the tenant is liable only for the portion of the repair caused by his negligent or willful conduct, and the landlord's evidence must provide a method by which the court can determine how much to allocate against the tenant, Sippin v.Ellam, SNBR-338 (1989); Strofolino v. Bordeau, NH-531 (1990). While the court should not impose an unreasonable burden of proof, judges handling property damage claims in landlord-tenant cases have traditionally sought to make sure that such claims are legitimate and that the amount claimed as damages is not inflated, Bonito v. Lawrence, NH-576 (1992)." DiBiaso v.Gargiulo, Superior Court, Judicial District of New Haven, Housing Session, No. CV N.H. 9009-3970 (July 9, 1993).
The plaintiffs claim, and the court finds, that the defendants vacated the house leaving it in a deplorable condition as evidenced by the photographs admitted into evidence and testimony of David Rascati, the person hired by the plaintiffs to clean and repair the house after the defendants had vacated. The court ascribes Mr. Rascati's remark, after detailing the shameful condition in which he found the house and the work that he did, that the condition of the house was "typical of when people move out", to the propensities of a man whose talents lay in fixing and building, not in listening and answering.[6] However, this cannot but effect his credibility, since his testimony was at best careless at times. On the other hand, I do not credit the testimony of the defendant Arminio who claimed that after she and Kallart had abandoned the premises, she returned with her mother — who did not testify — and cleaned up the house.
Much of the time spent by Rascati was allocated, according to CT Page 7442 his bill, to painting, "sanding + staining", "striping [sic] and waxing". For this work, plus cleaning, he charged $1,826.75. The balance of his $2,507.11 bill was for materials and the cost of dumping things abandoned at the house by the defendants. Not all of the damage, however, can be ascribed to the defendants' conduct, inappropriate though it was, and the court must consider what degree of damage would be ordinary wear and tear.[7] This house had been used by the plaintiffs as a rental property for some time, and the court infers that prior to the defendants' tenancy, the floors were approaching the time when they would have had to be re-sanded and finished.
The court finds that the cost of repair of the damages to the house caused by the defendants is $1,500.00.[8]
Finally, the plaintiffs claim attorney's fees in bringing and prosecuting this action. The lease provides that attorney's fees may be awarded. General Statutes § 47a-4 (7) prohibits the recovery of "landlord's attorneys fees in excess of fifteen per cent of any judgment against the tenant in any action in which money damages are awarded. . . ." Courts may take judicial notice of the file and "may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorneys fees. Guaranty Bank Trust Co. v. Dowling, 4 Conn. App. 376, 386, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985); O G Industriesv. Mizzoni, 23 Conn. App. 19, 578 A.2d 672 (1990)." (Internal quotation marks omitted.) Cabrera v. Cabrera, 23 Conn. App. 330,349, 580 A.2d 1227 (1990); see Buccino v. Cable Technology,Inc., 25 Conn. App. 676, 679, 595 A.2d 376 (1991).
Judgment shall enter in favor of the plaintiffs and against the defendants in the amount of $9,846.50, plus interest of $2,461.00 pursuant to General Statutes § 37-3a, plus attorney's fees of $1,300.00, plus taxable costs.
LEVIN, J.