RODNEY RICHMOND *v.* FRANK LONGO, SR.
(10396)

DUPONT, C. J., O'CONNELL and FREEDMAN, Js.

Argued January 22—decision released March 10, 1992

*John D. Palermo,* for the appellant (defendant).

*Wesley W. Horton,* with whom were *Mona E. Herman* and, on the brief, *Herbert Watstein,* for the appellee (plaintiff).

FREEDMAN, J. The defendant appeals from the judgment of the trial court, rendered after a jury trial, awarding the named plaintiff $80,000 in damages for injuries and losses caused by the defendant's negligence. On appeal, the defendant first argues that the trial court improperly precluded the defendant from cross-examining the plaintiff's expert witness about (1) the alleged suspension of his surgical privileges at area hospitals, (2) the alleged restrictions on the witness' medical license, and (3) the results of an alleged investigation, conducted by an area hospital, calling into question the witness' medical practices, surgical procedures and medical judgments. The defendant next argues that the trial court prohibited him from eliciting, on cross-examination, evidence of the plaintiff's witness' bias and prejudice against the defendant's expert witness. We reverse the judgment of the trial court, and remand the case to the trial court for a new trial.[1]

The jury could reasonably have found the following pertinent facts. On July 24, 1986, the plaintiff and the defendant were involved in an automobile accident that occurred after the defendant failed to stop at a stop sign. The plaintiff, who at the time of the accident was employed by a telephone company as a line repairman, suffered injuries to his back and neck. The plaintiff was examined and treated by a neurosurgeon, Guy Owens. Owens diagnosed the plaintiff as having a 10 percent permanent partial disability due to neck injuries caused by the accident.

[1] Because we agree with the defendant on the first issue and thus reverse the judgment of the trial court and remand for a new trial, we need not address the defendant's second issue.

Prior to trial, the plaintiff filed a motion in limine requesting that "in any examination of Dr. Guy Owens any questions, reference, testimony or evidence of any kind concerning Dr. Owens' controversies with the State of Connecticut concerning his medical licensure and issues concerning his privileges at and relationship with hospitals in the State of Connecticut not be permitted at trial." The plaintiff suggested that such testimony or evidence is irrelevant and would be highly prejudicial to the plaintiff's case. The trial court neither requested nor received any evidence, testimonial or otherwise, concerning Owens' "controversies." Rather, the trial court listened to brief arguments of counsel. Then, ruling from the bench, the trial court granted the plaintiff's motion "within the narrow confines under which it is made, and that is that any examination of Doctor Owens, any questions, reference, testimony or evidence of any kind concerning his controversies with the State of Connecticut, concerning his medical licensure and issues concerning his privileges at and relationship with area hospitals in the State of Connecticut not be permitted at trial." The defendant excepted to the trial court's ruling.

At trial, the central issue was the extent and permanence of the plaintiff's injuries. The outcome of the trial, therefore, hinged in large part on the testimony and credibility of the parties' expert witnesses. The defendant's expert witness, William Druckemiller, a neurosurgeon, testified prior to Owens, the plaintiff's expert. Druckemiller testified that he graduated from Yale Medical School and performed his internship in general surgery as well as his residency in neurosurgery at the University of Minnesota. He testified that in his examination of the plaintiff he found no objective signs of injury to, or disability in, the plaintiff's neck, and stated that he would not place the plaintiff under any physical restrictions or limitations. On cross-

examination, Druckemiller testified that any injury that lasts more than six months is chronic and is likely to continue. The doctor did not, however, identify any degree of permanent disability of the plaintiff caused by his alleged injury. Druckemiller acknowledged that it is possible for two doctors to have differing opinions about the same injury. The doctor also acknowledged that there are subjective signs of injury, such as complaints of pain, without any objective signs of any injury.

The plaintiff then called Owens to testify regarding his treatment and diagnosis of the plaintiff. The plaintiff first elicited from Owens testimony concerning Owens' medical education, training and general background. Owens testified that he graduated from Tufts University and Harvard Medical School. He served as an intern, and then as a resident, at Vanderbilt University Hospital in Nashville, Tennessee. He described himself as a "specialist" in neurology.[2] He also testified that he was "board certified in neurosurgery," and that to receive such certification one must spend two years in surgical education and an additional four years in neurosurgical training, practice an additional two years, and then take and pass an examination.

Owens testified on the basis of his examination, evaluation and treatment of the plaintiff, as well as his experience in neurosurgery, that the plaintiff suffered from a 10 percent permanent partial disability due to the injury to his neck, which was caused by the collision with the defendant. He testified on the basis of his experience as a neurosurgeon that the plaintiff will experience pain in the future, and that he will not be able to enjoy some activities of life that the average healthy

[2] Owens described neurology as the "diagnosis and treatment of diseases of the central nervous system and surgical correction of those disorders."

person is able to enjoy. Finally, he testified that the plaintiff "does not have evidence, however, of a surgically correctable problem . . . ."

On cross-examination, Owens again stated that "as of this juncture [the plaintiff is] not a surgical candidate. It may well be that two years from now he may require it."

While the jury was out of the courtroom, the defendant renewed his objection to the trial court's granting of the plaintiff's motion in limine regarding the examination of Owens. The defendant requested an opportunity to voir dire Owens outside the presence of the jury. The trial court denied the request. Instead, the trial court instructed the defendant to state for the record "what you claim an examination of those issues would produce." The defendant objected and argued for permission to question Owens, but the trial court overruled the objection and asked the defendant to go forward with his offer of proof.

The defendant indicated that he would like to ask Owens, at a minimum, certain questions. First, the defendant informed the court that he would like to ask Owens whether "he has any surgical privileges in the state of Connecticut." The defendant indicated that he believed the answer to that question would be relevant. The defendant then proposed to ask "the circumstances under which those privileges were terminated . . . ." The defendant also proposed to ask whether the termination of his surgical privileges was based, at least in part, on evidence of any improper surgical procedures performed by Owens. The defendant further stated to the court that "without asking the specific questions, without eliciting an answer, I don't think an appellate court, a reviewing court, has any idea whether or not these matters are relevant." The trial court then

stated that its ruling was the same as it was with respect to the motion in limine and an exception was noted.

The defendant then submitted two exhibits to the court, for identification purposes only.[3] One was a photocopy of a newspaper article which indicated that Owens had been reprimanded by the state of Connecticut, and that he had admitted mishandling cases involving two of his patients. The article also indicated that, in 1986, Owens had lost his privileges to practice at New Britain General Hospital, and, further, that he does not have surgical privileges at any hospital in the state. The other exhibit introduced by the defendant was a photocopy of a portion of a transcript of a deposition of Owens taken in relation to another proceeding. The transcript of the deposition indicated that he had been under investigation by the staff executive committee of New Britain General Hospital, and that the investigation included an inquiry into approximately 150 cases of surgical procedures performed by Owens between 1982 and 1985. Owens also stated in the deposition that a report prepared for the staff executive committee, which summarized the findings of the investigation, indicated that the hospital would require Owens to get second opinions from other doctors before performing surgical procedures at the hospital.[4] The trial court again repeated its previous ruling and an exception was again noted.

---

[3] These exhibits were submitted by the defendant in his attempted offer of proof. Offers of proof are allegations by the attorney that he represents to the court he could prove if granted an evidentiary hearing. *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 267, 413 A.2d 854 (1979). We acknowledge that the exhibits offered by the defendant are not evidence, but we rely on them here to indicate the nature of the voir dire that the defendant wanted to conduct.

[4] We take judicial notice of the fact that at the time the trial court considered the plaintiff's motion in limine concerning the cross-examination of Owens, Owens had a pending law suit against New Britain General Hospi-

The trial then proceeded to conclusion and the jury returned its $80,000 verdict for the plaintiff, which was accepted by the court over the defendant's objection.

The defendant claims that the trial court impermissibly limited his cross-examination of Owens. The cross-examination was originally limited pretrial by the court's granting of the plaintiff's motion in limine.[5] The motion in limine is not formally recognized by our statutes or rules of practice, and has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. C. Tait & J. LaPlante, Connecticut Evidence (1988) § 2.6.1, p. 30. When the determination of the admissibility of evidence hinges on other necessary facts that can properly be determined only during the trial after the necessary prerequisite testimony has been presented, such determination is more appropriately made after such prerequisite testimony has been presented.

In the present case, the plaintiff's motion was made prior to the commencement of trial, and thus prior to the direct testimony of Owens. The trial court took no evidence before ruling on the motion, and thus the trial

---

tal in which he sought damages and other relief because the hospital had terminated his surgical privileges. In that case, judgment entered in favor of the hospital, and an appeal by Owens taken from that judgment is currently before this court. "A court has the power to take judicial notice of a file in another pending court case. *State* v. *Bunkley,* 202 Conn. 629, 648, 572 A.2d 795 (1987)." *State* v. *Speers,* 17 Conn. App. 587, 601, 554 A.2d 769, cert. denied, 211 Conn. 808, 559 A.2d 1142, cert. denied, 493 U.S. 851, 110 S. Ct. 150, 107 L. Ed. 2d 108, cert. denied sub nom. *George* v. *Connecticut,* 493 U.S. 893, 110 S. Ct. 241, 107 L. Ed. 2d 192 (1989); see also *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 317, 455 A.2d 1332 (1983).

[5] "In limine" has been defined as "[o]n or at the threshold; at the very beginning; preliminarily." Black's Law Dictionary (6th Ed.).

court had no way of knowing whether, in fact, the allegations were true, or whether the alleged controversies actually involved the propriety of medical judgments of Owens. More important, the trial court had no way of knowing whether the controversies might become relevant after Owens' direct testimony.

Although we do not believe the trial court should have granted the motion in limine as it did, for the precise reasons stated above, this is not to say that we disapprove of the use of the motion in limine in all circumstances. In the present case, the motion in limine could have been properly used to request that after Owens testified, the jury be excused and a hearing be held to determine the scope of the defendant's permissible cross-examination. The trial court then would be in a much better position to determine both the relevance and the prejudice of the proposed cross-examination, and the defendant could not ask a potentially prejudicial question in front of the jury before the plaintiff could object or the court could prevent its being asked.

Although we believe that the trial court should not have granted the motion in limine pretrial, it did have a second opportunity, after Owens' direct testimony, to consider the defendant's proposed cross-examination when the defendant renewed his objection to the granting of the motion in limine and requested permission to conduct a voir dire of Owens outside the presence of the jury. The trial court refused to permit the voir dire and reiterated its ruling on the motion in limine. Because the trial court refused to permit the defendant's proposed cross-examination a second time, it is this ruling of the trial court that must withstand our scrutiny. We now consider, therefore, whether the trial court, after Owens' direct testimony, improperly limited the defendant's right to cross-examine Owens, and, if so, whether that limitation was prejudicial to the defendant so as to warrant a new trial.

The defendant does not argue that Owens was not qualified as an expert witness in this case. Rather, the defendant argues that the proposed line of questioning goes to the witness' qualifications and skill as a surgeon, and thus to his credibility as a witness. The defendant suggests that the alleged termination of Owens' surgical privileges and the restrictions on his license to practice medicine are relevant and proper for jury consideration. Finally, he argues that the preclusion of that evidence in this case, in which the outcome would turn largely on which of the two experts the jury believed, was prejudicial to his case and therefore requires reversal and a new trial.

Cross-examination is an indispensable means of eliciting facts that may raise questions on the credibility of witnesses. Cross-examination " 'is a substantial legal right which may not be abrogated or abridged at the discretion of the court to the prejudice of the cross-examining party.' " *Pickman* v. *Pickman,* 6 Conn. App. 271, 277–78, 505 A.2d 4 (1986); B. Holden & J. Daly, Connecticut Evidence § 10c. One of the proper purposes of cross-examination of an expert is to test the expert's qualifications and credibility, and the trial court has broad discretion in determining whether a given question satisfies this purpose. *Hyatt* v. *Zoning Board of Appeals,* 163 Conn. 379, 386, 311 A.2d 77 (1972); *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 666, 136 A.2d 918 (1957). When dealing with the testimony of expert witnesses, "[o]nce the threshold question of usefulness to the jury has been satisfied, any other questions regarding the expert's qualifications properly go to the weight, and not the admissibility, of his testimony." *Davis* v. *Margolis,* 215 Conn. 408, 417, 576 A.2d 489 (1990). Thus, questions regarding the expert's qualifications and skill go to the expert's credibility.

" '[T]he credibility of expert witnesses is a matter to be determined by the trier of fact.' . . . In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, *the expert's 'expertise,* his opportunity to observe the [plaintiff] and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them.' '' (Emphasis added; citations omitted.) *In re Juvenile Appeal (Docket No. 9268),* 184 Conn. 157, 170, 439 A.2d 958 (1981).

We believe that the trial court abused its discretion in the way that it ruled that mention of Owens' controversies would be prohibited. "Evidence that is inadmissibly prejudicial is not to be confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree, prejudicial. To be excluded, the evidence must create prejudice that is undue and so great as to threaten an injustice if the evidence were to be admitted." (Citations omitted.) *Chouinard* v. *Marjani,* 21 Conn. App. 572, 576, 575 A.2d 238 (1990).

Owens' direct testimony may have opened the door to questions on cross-examination concerning the alleged termination of his surgical privileges in Connecticut. Owens testified that he was a "board certified neurosurgeon." He stated that to be board certified he had to complete a certain number of years in the practice of neurosurgery. On two occasions, he stated that, in his expert medical opinion, the plaintiff did not require surgery. He also stated that the plaintiff may require surgery in the future. It was Owens, therefore, who initially put before the jury the question of his medical judgment involving surgical procedures. Having opened the door to this area of inquiry on direct examination, the defendant may have had a right to question further on cross-examination concerning the matters precluded by the court depending on the sub-

stance and nature of such matters, which could be determined only by a voir dire of the witness outside the presence of the jury. The court's refusal to permit such cross-examination without having full knowledge of what such cross-examination might elicit was improper.

When a party has not been permitted " 'fair and full cross-examination of a witness upon the subjects of his examination in chief . . . [the] denial of this right is . . . prejudicial' " and requires reversal by this court. *Fahey* v. *Clark,* 125 Conn. 44, 47, 3 A.2d 313 (1938). The central issue in the trial court was the extent and permanence of the plaintiff's injuries. Resolution of that issue revolved largely around the testimony of the experts, whose opinions differed in significant respects. Although the plaintiff testified about the extent of his injuries, the plaintiff was not competent to testify concerning the permanence of those injuries. The credibility of the neurosurgeons, therefore, was of critical importance in this case because it was from their testimony that the jury could determine the degree of permanence, if any, of the plaintiff's injuries. The jurors should have had before them all relevant evidence that would help them consider and weigh the testimony of the experts. To deny the defendant the right to cross-examine the plaintiff's expert on issues relating to his credibility without first allowing the defendant an opportunity to demonstrate the relevance and significance of the testimony the defendant wished to adduce was to deny the defendant his right to a fair trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.