# CADLE COMPANY *v.* ROBERT A. GINSBURG
## (AC 17539)

O'Connell, C. J., and Lavery and Spear, Js.

Argued September 28—officially released December 29, 1998

*Kenneth A. Votre*, for the appellant (defendant).

*Timothy D. Miltenberger*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendant, Robert A. Ginsburg, appeals from the judgment of the trial court in favor of the plaintiff, Cadle Company. On appeal, the defendant claims that the trial court improperly determined that (1) the plaintiff was a holder in due course, (2) the defendant received adequate consideration for the promissory note, (3) the defendant was not fraudulently induced to execute the note and the note was not obtained by a misrepresentation of material facts, (4) there was a proper foundation for the admission of the note and the defendant was not entitled to an interlocutory examination prior to the admission of the note and (5) the defendant was not entitled to a new trial. We affirm the judgment of the trial court.

The following facts are necessary to a resolution of the issues on appeal. The defendant is an experienced attorney who specializes in commercial law. In the late 1980s, the defendant was a shareholder of Delco Development Company, Inc. (Delco), a real estate development company that was adversely affected by the collapse of the state's real estate market. See *Mechanics & Farmers Savings Bank, FSB* v. *Delco Development Co.*, 232 Conn. 594, 656 A.2d 1034, cert. denied, 516 U.S. 930, 116 S. Ct. 335, 133 L. Ed. 2d 235 (1995).

On September 14, 1988, Delco borrowed $2 million from Great Country Bank (Great Country) and executed a promissory note in that amount payable to Great Country. On the same date, three Delco shareholders, the defendant, Gary Ginsberg and Dennis Nicotra, signed agreements of guarantee and suretyship.

In April, 1991, Great Country filed an action against the defendant and Gary Ginsberg. The complaint alleged that Delco had defaulted on its note and sought monetary damages against the defendants. Nicotra was not named as a defendant in the action. On July 24, 1991, Nicotra executed a satisfaction agreement with a number of creditors, including Great Country. Delco was not a party to that agreement, in which Nicotra promised to transfer a number of his assets, including his Delco stock, to the creditors. In return, the creditors released Nicotra from various obligations. Great Country specifically released Nicotra "from any further liability as a guarantor" and agreed, with certain limitations, to indemnify him with respect to any claim for contribution by other guarantors.

On the same day, July 24, 1991, the creditors who had settled with Nicotra, including Great Country, signed an intercreditor agreement to divide the assets obtained in the settlement. Neither Delco nor Nicotra were parties to that agreement. Settlement negotiations between opposing counsel in the action by Great Country against the defendant and Gary Ginsberg commenced in the fall of 1991. Great Country had not informed the defendant or Gary Ginsberg of its agreement with Nicotra. The defendant ultimately agreed to settle the case by executing a promissory note, which is the subject of this action.

On October 11, 1991, the defendant executed a promissory note in the amount of $100,000, payable to Great Country. The note required the defendant to pay interest in the amount of 9 percent annually, commencing on October 11, 1992, and provided that the entire unpaid balance would be due on October 11, 1996, "together with any costs, expenses and attorney's fees incurred for the collection of [the] note." Additionally, the note waived presentment, protest, demand and notice of dishonor. In return for the defendant's $100,000 note, on

November 8, 1991, Great Country filed a withdrawal of its action. Great Country also released various attachments it had placed on the defendant's property and returned both the original Delco note and the defendant's guarantee.

In January, 1992, the defendant first learned of Great Country's July, 1991 settlement with Nicotra. The defendant subsequently informed Great Country that he would not pay the note, and he has not made any payments of either principal or interest.

On April 6, 1994, Great Country transferred the note to the plaintiff. The note was part of a pool of approximately 106 loans the plaintiff purchased from Great Country. On May 5, 1994, the plaintiff informed the defendant that it had purchased his loan from Great Country and instructed him to send all future payments to the Cadle Company.

In May, 1995, the plaintiff filed the present action against the defendant, seeking monetary damages on the note. The defendant asserted five special defenses, claiming that (1) the note is void and unenforceable for lack of consideration, (2) the note was obtained by fraud, (3) the note was obtained by misrepresentation of material facts, (4) the note is unenforceable and barred by equity because of Great Country's unconscionable acts and (5) the plaintiff violated the Connecticut Unfair Trade Practices Act, General Statutes § 42a-110 (a) et seq. The defendant failed to brief or argue his fourth and fifth special defenses and, therefore, the trial court deemed these defenses abandoned.

The trial court found that the plaintiff owned the note, the defendant signed the note and the note had not been paid. Additionally, the trial court determined that the plaintiff was a holder in due course because it took the note for value, in good faith and without

notice of any defenses. The court rejected the defendant's first special defense, finding that lack of consideration does not apply to a holder in due course and, even if it did, there was ample consideration for the note because Great Country, the prior holder of the note, withdrew its suit against the defendant in exchange for the note. The court rejected the defendant's second special defense, finding that "[a] general defense of fraud is . . . insufficient when raised against a holder in due course. The fraud must have 'induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms.' General Statutes § 42a-3-305 (a) (1) (iii)." The court found that the defendant failed to introduce any evidence that he had been fraudulently induced to execute the note. The court also rejected the defendant's third special defense, finding that he failed to adduce any evidence that the note was obtained by misrepresentation of material facts.

On August 6, 1997, the trial court entered judgment for the plaintiff, and the defendant appealed to this court. On March 10, 1998, the defendant moved for a new trial, but the trial court denied the motion as untimely. We allowed the defendant to amend his appeal to include the trial court's denial of the motion for a new trial.

I

The defendant first claims that the trial court improperly determined that the plaintiff was a holder in due course of the promissory note that it purchased from Great Country on April 6, 1994. We disagree.

"Only a holder in due course may enforce a negotiable instrument without regard to a maker's assertion of a personal defense . . . . Evidence of the existence of a personal defense does, however, shift to the holder of the instrument the burden of proving his due course

status." (Citations omitted.) *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, 187 Conn. 637, 640, 447 A.2d 1163 (1982). The defendant offered evidence as to the existence of a personal defense and, therefore, the plaintiff was required to prove that it was a holder in due course.

General Statutes § 42a-3-302 (a) provides that a " 'holder in due course' means the holder of an instrument if . . . (2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 42a-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 42a-3-305 (a)."

The defendant claims that the plaintiff failed to satisfy the first, second, third and sixth elements of § 42a-3-302 (a) (2) and, therefore, the plaintiff is not a holder in due course. The trial court found that the plaintiff sustained its burden by adducing overwhelming evidence that it was a holder in due course. We will not disturb the trial court's finding of fact unless it was clearly erroneous. *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 569, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998); see *In re Parkwood, Inc.*, 461 F.2d 158, 175 (D.C. Cir. 1971). "A finding is 'clearly erroneous' when, even though the finding is supported by some evidence, the reviewing court, on the basis of all the evidence, is left with the definite and firm conviction that a mistake has been committed by the fact finder." *Mastronardi* v. *Infante*, 34 Conn. App. 584, 591, 642 A.2d 84, cert. denied, 231 Conn. 907, 648 A.2d 154 (1994).

## A

The defendant first claims that the trial court improperly determined that the plaintiff obtained the note from Great Country for value. Specifically, the defendant contends that the note was not transferred for value because the plaintiff "could not specify the amount [it] paid [for the note], since [the note] was purchased along with about 106 other notes." We disagree.

The plaintiff purchased the note from Great Country as part of a pool of 106 loans. Although the plaintiff could not specify the exact amount it paid for the note, the trial court properly held that "[t]his hardly means that the note was not taken for value. The note was still transferred in return for payment, and thus was transferred for value pursuant to General Statutes § 42a-3-303 (a) (1)."[1]

The defendant does not dispute that the plaintiff issued payment to Great Country for the pool of loans. Although the plaintiff could not specify the exact amount it paid for the note, the trial court properly determined that the note was taken for value because the plaintiff issued a single payment for the entire pool of 106 loans, which included the note in question. It is well established that "[a] single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or two promises or of many promises. The consideration is not rendered invalid by the fact that it is exchanged for more than one promise." 2 A. Corbin, Contracts (Rev. Ed. 1995) § 5.12, pp. 56–57; see *Krasselt* v. *Koester*, 99 Idaho 124, 126, 578 P.2d 240 (1978); *Fortner* v. *Fannin Bank in Windom*, 634 S.W.2d 74 (Tex. App. 1982); 1 Restatement (Second), Contracts

---

[1] General Statutes § 42a-3-303 (a) provides in relevant part: "An instrument is issued or transferred for value if:

"(1) The instrument is issued or transferred for a promise of performance, to the extent the promise has been performed . . . ."

§ 80, comment (a) (1981). We conclude, therefore, that the trial court properly determined that the note was taken for value.

## B

The defendant next claims that the trial court improperly found that the plaintiff obtained the note in good faith. Specifically, the defendant alleges that the plaintiff acted in bad faith because (1) the plaintiff failed to make an inquiry so as to remain ignorant of facts that it feared would disclose a defect in the transaction and (2) it paid an amount far less than the note's face value. See *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 187 Conn. 644. We disagree.

" 'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." General Statutes § 42a-3-103 (a) (4). "The definition [of good faith] requires not only honesty in fact but also 'observance of reasonable commercial standards of fair dealing.' Although fair dealing is a broad term that must be defined in context, it is clear that it is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care in conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction. . . . [F]air dealing . . . [is] to be judged in light of reasonable commercial standards but those standards in each case are directed to different aspects of commercial conduct." A.L.I. Uniform Commercial Code (14th Ed. 1995) § 3-103, official comment 4.

The trial court found that the evidence overwhelmingly established that the plaintiff took the note in good faith. The court also found that the defendant did not provide any credible evidence to demonstrate that the plaintiff deliberately failed to make an inquiry into facts

that would disclose a defect in the transaction. Additionally, there was no evidence of the exact amount the plaintiff paid for the note.

The defendant did not seek a motion for articulation requesting the factual basis on which the trial court found that the plaintiff obtained the note in good faith. See Practice Book § 66-5. With the lack of articulation in mind, we reviewed the pleadings and the evidence in the entire record and conclude that the court's finding was not clearly erroneous.

C

The defendant next claims that the trial court improperly determined that the plaintiff purchased the note without notice that it was overdue and subject to an uncured default. We are not persuaded.

The defendant claims that the plaintiff had notice that the note "was long over due at the time of purchase" because the defendant had not made any interest payments when the plaintiff purchased the note on April 6, 1994. Although the note required the defendant to pay interest in the amount of 9 percent annually, commencing on October 11, 1992, the single payment of principal was not due until October 11, 1996.

General Statutes § 42a-3-302 (a) (2) provides in relevant part that a holder in due course must take an instrument without "notice that the instrument is overdue . . . ." General Statutes § 42a-3-304 (b) (2) and (c) establishes, however, that the note was not overdue when the plaintiff purchased it. "With respect to an instrument payable at a definite time . . . [i]f the principal is not payable in instalments and the due date has not been accelerated, the instrument becomes overdue on the day after the due date." General Statutes § 42a-3-304 (b) (2). The note's principal was not payable in installments and neither Great Country nor the plaintiff

accelerated the note until the plaintiff instituted this suit in April, 1995. Therefore, the note became overdue in April, 1995, approximately one year after the plaintiff purchased it from Great Country.

Although the defendant had defaulted on its payment of interest prior to the plaintiff's acquisition of the note, "[u]nless the due date of principal has been accelerated, an instrument does not become overdue if there is a default in payment of interest but no default in payment of principal." General Statutes § 42a-3-304 (c). When the plaintiff purchased the note, there was a default in the payment of interest, but the defendant had not defaulted in the payment of principal. Accordingly, the defendant's claim is without merit.

The defendant also claims that "there is no question from the testimony that the note was in default" when the plaintiff purchased it. General Statutes § 42a-3-302 (a) (2) (iii) provides in relevant part that a holder in due course must take an instrument "without notice that . . . there is an uncured default with respect to payment of another instrument issued as part of the same series." The defendant failed to introduce any evidence that the plaintiff had notice of an uncured default with respect to payment of another instrument issued as part of the same series.

We conclude, therefore, that the court properly determined that the plaintiff purchased the note without notice that it was overdue and subject to an uncured default.

D

The defendant next claims that the trial court improperly determined that the plaintiff purchased the note without notice that there was a defense or claim in

recoupment as described in General Statutes § 42a-3-305 (a).[2] We disagree.

The court found that "[t]he evidence overwhelmingly shows that [the plaintiff] took the note . . . without notice of a defense." After a careful review of the pleadings and the evidence in the entire record, we conclude that the court properly determined that the plaintiff obtained the note without notice that there was a defense or claim in recoupment.

We conclude, therefore, that the court properly found that because the plaintiff purchased the note for value, in good faith and without notice that it was overdue or subject to an incurable default, defense or claim in recoupment, the court properly determined that the plaintiff was a holder in due course.

## II

The defendant next claims that the note is void and unenforceable because he did not receive adequate consideration for executing it. We are not persuaded.

---

[2] General Statutes § 42a-3-305 (a) provides: "Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

"(1) A defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

"(2) A defense of the obligor stated in another section of this article or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

"(3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought."

Lack of consideration is not a viable defense against a holder in due course. See General Statutes § 42a-3-305 (a) (2) and (b).[3] "By tradition, the defenses from which a holder in due course takes free . . . include: failure or lack of consideration." 2 J. White & R. Summers, Uniform Commercial Code (4th Ed. 1995) p. 190. The defendant cannot maintain a defense of lack of consideration because the trial court properly determined that the plaintiff was a holder in due course.

## III

The defendant next claims that the note is void and unenforceable because (1) he was fraudulently induced into executing the note and (2) the note was obtained by misrepresentation of material facts. We disagree.

## A

The defendant claims that he was fraudulently induced into executing the note because he was not informed, prior to signing it, that Nicotra had executed a satisfaction agreement with several creditors, including Great Country, the original holder of the note.

A general defense of fraud is insufficient when raised against a holder in due course. The fraud must have "induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms. . . ." General Statutes § 42a-3-305 (a) (1) (iii). "[Section 42a-3-305] (a) (1) (iii)

---

[3] General Statutes § 42a-3-305 (b) provides in relevant part: "The right of a holder in due course to enforce the obligation of a party to pay the instrument is . . . not subject to defenses of the obligor stated in [§ 42a-3-305] (a) (2) . . . ." A.L.I., Uniform Commercial Code (14th Ed. 1995) § 3-305, official comment 2 provides in relevant part that "[§ 42a-3-305] (a) (2) states other defenses that, pursuant to subsection (b), are cut off by a holder in due course. These defenses comprise those specifically stated in Article 3 and those based on common law contract principles. Article 3 defenses [include] . . . *instruments issued without consideration* . . . ." (Emphasis added.)

refers to 'real' or 'essential' fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that the signature on the instrument is ineffective because the signer did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms. The test of the defense is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including intelligence, education, business experience, and ability to read or understand English of the signer." A.L.I., Uniform Commercial Code (14th Ed. 1995) § 3-305, official comment 1.

After a careful review of the record, we conclude that the court properly determined that the defendant was not fraudulently induced into executing the note. The defendant is a real estate developer and an experienced attorney specializing in commercial law. He was not deceived about the character of the instrument he was asked to sign. The defendant testified that Great Country made "an offer to settle the $2 million claim for $200,000, a $100,000 note from myself and a $100,000 note from Gary [Ginsburg]." Moreover, the defendant testified that he reviewed and edited the note before he executed it.[4]

---

[4] The defendant testified: "When I received [the note] I had several objections to the form of the note and I edited it and there were further discussions between myself and [the attorney for Great Country] and it was not until October, some two, two and a half months later, that we finally executed the papers."

## B

The defendant next claims that the note is void and unenforceable because it was obtained by a misrepresentation of material facts. Specifically, the defendant claims "that disclosure [of Nicotra's satisfaction agreement] would have been material in [his] . . . decision to execute the note." We disagree.

On the basis of our Supreme Court's decision in *Mechanics & Farmers Savings Bank, FSB* v. *Delco*, supra, 232 Conn. 594, a case involving the defendant, Nicotra, and facts similar to this case, we conclude that Great Country's failure to inform the defendant about Nicotra's satisfaction agreement did not constitute a misrepresentation of material facts.

In *Mechanics & Farmers Savings Bank, FSB*, Delco executed a promissory note secured by a mortgage. Id., 595. Delco's shareholders, the defendant, Gary Ginsberg and Nicotra, unconditionally guaranteed payment of all obligations due under the note. Id. Delco defaulted on the note and the plaintiff instituted an action for strict foreclosure against Delco and for deficiency judgments against Delco and the guarantors of the note. Id., 595–96. The defendant claimed that the note was partially paid and satisfied when the plaintiff entered into a satisfaction agreement with Nicotra and an intercreditor agreement. Id., 596. Here, too, the defendant was not a party to Nicotra's agreement. In rejecting the defendant's claim, our Supreme Court held that the defendant could not rely on agreements entered into between Nicotra and his creditors because " 'there is simply no legal or equitable basis upon which the [defendant] can argue that an agreement negotiated by Dennis Nicotra to satisfy his debts . . . is applicable to [the defendant].' " Id., 597.

As in *Mechanics & Farmers Savings Bank, FSB*, there is simply no legal or equitable basis on which the defendant can argue that Nicotra's satisfaction

agreement affected the defendant's liability on the note, and, therefore, Great Country's failure to disclose this information to the defendant did not constitute a misrepresentation of material facts.

## IV

The defendant next claims that the trial court improperly (1) admitted the note into evidence despite the plaintiff's failure to establish its authenticity and (2) denied the defendant's request for an interlocutory examination prior to the admission of the note. We disagree.

## A

The defendant claims that the trial court improperly admitted the note into evidence without first establishing its authenticity. We are not persuaded.

The plaintiff introduced a photocopy of the note and it was identified by a representative of the plaintiff. The defendant objected to the admission of the note, alleging that the plaintiff's representative "has not identified the signature on the note . . . as the note allegedly signed by the defendant."

"In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted *unless specifically denied in the pleadings.* . . ." (Emphasis added.) General Statutes § 42a-3-308 (a). "In the absence of such specific denial the signature stands admitted, and is not in issue." A. L. I., Uniform Commercial Code, supra, § 3-308, official comment 1.

A copy of the note was attached to the complaint, and the complaint alleged that "[t]he defendant *signed* a loan note dated October 11, 1991, in which he promised to pay $100,000.00, together with interest." (Emphasis added.) The defendant admitted that he

signed the note in his answer to the complaint. Accordingly, § 42a-3-308 (a) establishes that the note was properly admissible and, therefore, it was unnecessary for the plaintiff to authenticate it. The defendant's claim is without merit.

## B

The defendant next claims, relying on our decision in *Richmond* v. *Longo*, 27 Conn. App. 30, 604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992), that the trial court improperly denied his request for an interlocutory examination prior to the admission of the note. We disagree.

On direct examination, a representative of the plaintiff, Jeffrey G. Joseph, testified as to the authenticity of the note. Prior to the admission of the note, the defendant requested an interlocutory examination, including an opportunity to voir dire Joseph. Although the trial court denied the defendant's request and admitted the note into evidence, it informed the defendant that he would have an opportunity to cross-examine Joseph.

The defendant's reliance on *Richmond* v. *Longo*, supra, 27 Conn. App. 30, is misplaced. In *Richmond*, the trial court granted the plaintiff's motion in limine, restricting the defendant's opportunity to cross-examine an expert witness on issues relating to the expert's credibility. Id., 32. The defendant then unsuccessfully petitioned the trial court for an opportunity to voir dire the expert, outside the presence of the jury, to demonstrate the relevance and significance of the questions he wanted to ask the expert on cross-examination. Id., 34. In reversing the decision of the trial court, we held that "[t]o deny the defendant the right to cross-examine the plaintiff's expert on issues relating to his credibility without first allowing the defendant an

opportunity to demonstrate the relevance and signifi-cance of the testimony the defendant wished to adduce was to deny the defendant his right to a fair trial." Id., 40.

In contrast, in the present case, the trial court did not place any restrictions on the scope of the defendant's cross-examination of Joseph. It was, therefore, unnecessary for the trial court to authorize an interlocutory examination. Additionally, an interlocutory examination was unnecessary because the note was properly authenticated. See General Statutes § 42a-3-308 (a). We conclude, therefore, that the trial court properly declined the defendant's request for an interlocutory examination.

V

In his final claim, the defendant contends that the trial court improperly denied his motion for a new trial. We disagree.

On August 6, 1997, the trial court entered judgment for the plaintiff. On March 10, 1998, the plaintiff filed a motion for a new trial. On April 20, 1998, the trial court denied the defendant's motion for untimeliness. On April 30, 1998, the defendant sought permission from this court to amend his appeal, and we allowed the defendant to amend his appeal to include the trial court's denial of his motion.

Practice Book § 16-35, formerly § 320, provides that motions for new trials must be filed with the clerk within ten days after the judgment is entered. The trial court rendered judgment on August 6, 1997 and the defendant filed this motion on March 10, 1998, well beyond the ten day limit of § 16-35. We conclude, there-fore, that the trial court properly denied the defendant's motion for untimeliness.[5]

---

[5] Even were we to conclude, as the defendant claims, that the trial court should have treated his motion for a new trial as a petition for a new trial, which is governed by General Statutes § 52-270, we would reach the same

The judgment is affirmed.

In this opinion the other judges concurred.

conclusion. "A petition for a new trial in a civil matter is governed by General Statutes § 52-270. The petition is instituted by a writ and complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding." (Internal quotation marks omitted.) *Waterworks* v. *Audet*, 29 Conn. App. 722, 723, 617 A.2d 932 (1992). Failure to comply with the foregoing requirements deprives the trial court of subject matter jurisdiction over the petition. Id., 723–24. The defendant's motion for a new trial was not served by writ and complaint, thereby depriving the trial court of subject matter jurisdiction over it.

In his motion for a new trial, the defendant claims, for the first time, that the plaintiff acquired the note as part of a bulk transaction and, therefore, it is not a holder in due course. See General Statutes § 42a-3-302 (c). On appeal, this court cannot review the merits of a claim that the trial court did not have jurisdiction to examine.