[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a petition for a new trial on the ground of newly discovered evidence. The underlying action was brought by the defendant, the Cadle Company (Cadle), on a promissory note executed by the plaintiff, Robert A. Ginsburg, payable to Great Country Bank. The note was in a pool of promissory notes purchased by Cadle from Great Country Bank. That case was tried to the court (Blue, J.) which rendered judgment for Cadle in the amount of $161,643.88 plus $15,000.00 attorney's fees. Ginsburg appealed to the Appellate Court which affirmed the judgment of the trial court. See Cadle Co. v. Ginsburg, 51 Conn. App. 392,721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125
(1999). While the original judgment was on appeal, Ginsburg petitioned this court for a new trial, pursuant to General Statutes § 52-270.[1]
The material facts found by the trial court in the underlying action were aptly summarized by the Appellate Court. "The [plaintiff] is an experienced attorney who specializes in commercial law. In the late 1980's, [he] was a shareholder of Delco Development Company, Inc. (Delco), a real estate development company that was adversely affected by the collapse of the state's real estate market. . .
"On September 14, 1988, Delco borrowed $2 million from Great Country Bank (Great Country) and executed a promissory note in that amount payable to Great Country. On the same date, three CT Page 9632 Delco shareholders, the [plaintiff], Gary Ginsburg [his uncle] and Dennis Nicotra, signed agreements of guarantee and suretyship.
"In April, 1991, Great Country filed an action against the [plaintiff] and Gary Ginsburg. The complaint alleged that Delco had defaulted on its note and sought monetary damages against the defendants. Nicotra was not named as a defendant in the action. On July 24, 1991, Nicotra executed a satisfaction agreement with a number of creditors, including Great Country. Delco was not a party to that agreement, in which Nicotra promised to transfer a number of his assets, including his Delco stock, to the creditors. In return, the creditors released Nicotra from various obligations. Great Country specifically released Nicotra "from any further liability as a guarantor' and agreed, with certain limitations, to indemnify him with respect to any claim for contribution by other guarantors.
"On the same day, July 24, 1991, the creditors who had settled with Nicotra, including Great Country, signed an intercreditor agreement to divide the assets obtained in the settlement. Neither Delco nor Nicotra were parties to that agreement. Settlement negotiations between opposing counsel in the action by Great Country against the [plaintiff] and Gary Ginsburg commenced in the fall of 1991. Great Country had not informed the (plaintiff] or Gary Ginsburg of its agreement with Nicotra. The [plaintiff] ultimately agreed to settle the case by executing a promissory note, which is the subject of this action.
"On October 11, 1991, the [plaintiff] executed a promissory note in the amount of $100,000, payable to Great Country. The note required the [plaintiff] to pay interest in the amount of 9 percent annually, commencing on October 11, 1992, and provided that the entire unpaid balance would be due on October 11, 1996, `together with any costs, expenses and attorney's fees incurred for the collection of [the] note.' Additionally, the note waived presentment, protest, demand and notice of dishonor. In return for the defendant's $100,000 note, on November 8, 1991, Great Country filed a withdrawal of its action. Great Country also released various attachments it had placed on the [plaintiff's] property and returned both the original Delco note and the [plaintiff's] guarantee.
"In January, 1992, the [plaintiff] first learned of Great Country's July, 1991 settlement with Nicotra. The [plaintiff] CT Page 9633 subsequently informed Great Country that he would not pay the note, and he has not made any payments of either principal or interest." Cadle Co. v. Ginsburg, supra, 51 Conn. App. 393-95.
The underlying action was brought in May, 1995 by Cadle in one count, on the note, against the plaintiff. The case was tried over two years later. The defendant asserted five special defenses, two of which were deemed abandoned by the trial court. The remaining defenses alleged: (1) the note was void and unenforceable for lack of consideration, (2) the note was obtained by fraud, (3) the note was obtained by misrepresentation of material facts. Id., 395.
In the trial of the underlying action, Mr. Jeffrey Joseph, an account officer with Cadle, was its only witness in its case in chief. Mr. Joseph testified about Cadle's acquisition of the promissory note. On cross examination, the plaintiff's attorney questioned Joseph as follows:
 Q. And I think you testified that this obligation, purported obligation was acquired as a package of several loans; is that fair to say?
A. I believe it's over a hundred.
 Q. And, sir, can you tell us what The Cadle Company paid for this obligation?
* * *
 A. I have no idea. Again, it is a package of loans. There is not way of putting a dollar amount on just this loan.
 THE COURT: So what you are saying, sir, is not that you don't remember, but that the calculation can't be made because there is one price for the entire package; is that correct?
WITNESS: Yes, sir.
THE COURT: Thank you.
The trial court found that "[o]n April 6, 1994, Great Country transferred the note to [Cadle]. The note was part of a pool of CT Page 9634 approximately 106 loans [Cadle] purchased from Great Country. On May 5, 1994, [Cadle] informed the [plaintiff] that it had purchased his loan from Great Country and instructed him to send all future payments to the Cadle Company." Cadle Co. v. Ginsburg,
supra, 51 Conn. App. 395.
"The trial court found that the plaintiff owned the note, the defendant signed the note and the note had not been paid. Additionally, the trial court determined that the plaintiff was a holder in due course because it took the note for value, in good faith and without notice of any defenses. The court rejected the defendant's first special defense, finding that lack of consideration does not apply to a holder in due course and, even if it did, there was ample consideration for the note because Great Country, the prior holder of the note, withdrew its suit against the defendant in exchange for the note. The court rejected the defendant's second special defense, finding that [a] general defense of fraud is . . . insufficient when raised against a holder in due course. The fraud must have induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or essential terms. General Statutes § 42a-3-305 (a)(1) (iii). The court found that the defendant failed to introduce any evidence that he had been fraudulently induced to execute the note. The court also rejected the defendant's third special defense, finding that he failed to adduce any evidence that the note was obtained by misrepresentation of material facts." (Internal quotation marks omitted.) Cadle Co. v. Ginsburg, supra, 51 Conn. App. 396.
The plaintiff appealed the judgment of the trial court to the Appellate Court, which affirmed the judgment. The Appellate Court held, inter alia, that the trial court's finding that Cadle was a holder in due course was not clearly erroneous. The Appellate Court also held that as a result of Cadle's being a holder in due course, the plaintiff could not maintain a defense of lack of consideration nor a general defense of fraud. Id., 403.[2]
On January 20. 1998, during the pendency of the plaintiff's appeal to the Appellate Court, the attorney for Gary R. Ginsburg deposed Mr. Joseph in the civil action The Cadle Company v. GaryR. Ginsburg, Superior Court, judicial district of New Haven, No. 375131. That action also was an action on a promissory note executed by Gary R. Ginsburg payable to Great Country Bank and was purchased in the "package" of loans which included the plaintiff's promissory note. There is no evidence that the CT Page 9635 plaintiff's attorney was present during the deposition.
Under questioning by the attorney for Gary R. Ginsburg, Joseph testified at his deposition as follows:
 Q Okay. How many assets were purchased in this particular transaction, which included Mr. Ginsburg's Note?
A Approximately 150.
Q Were they all purchased from Great Country Bank?
A Yes.
 Q Okay. When was this — are you familiar with the term `bulk sale'?
A I am
Q Mr. Joseph, what is a bulk sale?
 A That's when we acquire a pool or a number of loans.
 Q Would you characterize this transaction which included the purchase of Gary R. Ginsberg's [sic] Note as a bulk sale transaction?
A Yes.
 Q When was this particular bulk sale transaction consummated?
A On or about March 31, 1994.
 Q I believe earlier you referenced an approximate 50 page document. Is that memorialized in that transaction?
A. Yes.
Q. Does that document include any reference to Mr. Ginsburg Note? CT Page 9636
A. Yes.
 Q. And is there a complete inventory or list of all those purchases?
A. Yes.
Q. What was the purchase price for the bulk sale?
A. $320,000.00.
 Q. Okay. Now Mr. Joseph, also, if you will refer to Exhibit B, I would like you to look at page 3 which says. "Memo to Tom Pantello."
A. Yes.
Q. Do you have that?
A. Yes.
 Q. Very good. Look down at portfolio 1 and portfolio 2 — A. Yes.
 Q. Under which category would Mr. Ginsberg's Note be in?
A. Portfolio 1.
 Q. And which subsection would it be under, commercial, residential, or consumer?
A. Commercial Charge-offs.
 Q. So, is it fair to say that Cadle paid one cent on the dollar on Mr. Ginsberg's Note?
A. That was the average we paid for the total pool.
 Q Do you know how much Cadle specifically paid for Mr. Ginsberg's Note?
A No. CT Page 9637
Q Do you know anyone who does know that information?
 A Again, we acquired this Note in a bulk sale, in a bulk purchased, so that one particular Note — there was no price for that one. Again, we based our bid on a portfolio of loans.
The plaintiff obtained the transcript of Joseph's deposition and brought this action. In his amended complaint, the plaintiff contends that Joseph's deposition testimony reveals that his earlier trial testimony "was inaccurate and possibly intentionally untruthful." In his brief, the plaintiff uses stronger language. Joseph's trial testimony, he argues, "was false. It is probable that it was intentionally untruthful." He also suggests that Joseph's testimony was perjured. The plaintiff alleges that Joseph's deposition testimony is new evidence of the amount paid by Cadle for his promissory note and, therefore, new evidence that Cadle was not a holder in due course. That "The Cadle Company paid one cent on the dollar for the Note," alleges the plaintiff, "would affect the court's decision as to whether the Note was acquired in good faith for boda fide consideration."
This case was tried on the merits to the court.[3] The plaintiff tried his case in chief solely on documents, principally the transcript of the trial in the underlying action and the transcript of the deposition of Mr. Joseph in the action of The Cadle Company v. Gary R. Ginsburg.
"The function of a court at a hearing for a new trial is to determine whether the evidence presented at the hearing considered with the evidence presented at the original trial warrants the granting of a new trial. That determination is within the sound discretion of the court. . . . The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done . . . and whether it is probable that on a new trial a different result would be reached . . . A petition for a new trial is addressed to the discretion of the trial court and will never be granted except upon substantial grounds. . . . [T]he discretion which the court is called upon to exercise is not an absolute but a legal one.
"The plaintiff has the burden of proving that the evidence was in fact newly discovered; that it would be material to the issue on a new trial; that it could not have been discovered and produced on the former trial by the exercise of due diligence; CT Page 9638 that it is not merely cumulative; and that it is likely to produce a different result in a new trial. . . ." (Citations omitted; internal quotation marks omitted.) Kubeck v. ForemostFoods Co., 190 Conn. 667, 669-70, 461 A.2d 1380 (1983)
There is little new in the evidence that the plaintiff claims is newly discovered. At the trial of the underlying action Mr. Joseph testified that the plaintiff's promissory note was acquired as part of a "package" which contained over a hundred other loans. Cadle had bid on the package as a whole. Joseph had "no idea" what Cadle paid for just the plaintiff's loan because it was in "a package of loans. There's no way of putting a dollar amount on just this loan."
In his subsequent deposition Joseph stated that the transaction in which Cadle purchased the note was a "bulk sale transaction" which included "approximately 150" other promissory notes. The nature of the transaction, however, was evident from his trial testimony in which he described the purchase as "a package." It is true that "[e]xcept to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken . . . by purchase as part of a bulk transaction not in the ordinary course of business of the transferor . . . General Statutes S 42a-3-302 (c) (ii); see Rosa v. Colonial Bank,207 Conn. 483, 488-89, 542 A.2d 1112 (1988). However, there is no evidence, here or in the underlying action, that the transaction by which Cadle obtained this promissory note was other than in the ordinary course of business of Great Country Bank. Joseph's deposition testimony[4] that the average price paid by Cadle for the pool of over 100 loans it purchased for $320,000 from Great Country Bank was one cent on the dollar does not prove that Cadle did not purchase the plaintiff's promissory note for value, at least without knowing more about other loans in the pool. While a holder in due course must take the instrument for value and in good faith; General Statutes § 42a-3-302(a)(1); "[a]n instrument is issued or transferred for value if: (1) the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed." General Statutes § 42a-3303(a)(1). "It is well established that [a] single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or two promises or of many promises. The consideration is not rendered invalid by the fact that it is exchanged for more than one promise." (Internal quotation marks omitted.) Cadle Company v. Ginsburg, supra, CT Page 963951 Conn. App. 398. "Similarly, [while it is true that] if a party pays for an instrument an amount far less than its face value, such evidence is a factor that a trier may reasonably consider in weighing whether a purchase was made in good faith"; FundingConsultants v. Aetna Casualty Surety Co., 187 Conn. 637, 644,447 A.2d 1163 (1982); there remains no such evidence here.
The evidence claimed as newly discovered is merely cumulative. "A new trial is not required if t-the evidence is merely cumulative, that is, if the evidence duplicates a fact already established or is of the same nature as was previouslyoffered for proof of a fact." (Emphasis added.) Carrione v.State, 3 Conn. App. 633, 635, 491 A.2d 421, cert. denied,197 Conn. 801, 495 A.2d 280 (1985). Where essentially the same evidence is submitted with somewhat more detail, it is, ordinarily, nonetheless cumulative. Dortch v. State,142 Conn. 18, 27, 110 A.2d 471 (1954).
Moreover, "[t]o entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied on could have been known with reasonable diligence, a new trial will not be granted." White v.Avery, 81 Conn. 325, 328, 70 A. 1065 (1908). "Due diligence is manifested by foresight, and a want of it is not excused by activity following disaster." Andrews v. Olaff, 99 Conn. 530,538, 122 A. 108 (1923). "Due diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible. . . . The question which must be answered is not what evidence might have been discovered, but rather what evidence would have been discovered by a reasonable plaintiff by persevering application, [and] untiring efforts in good earnest."Kobeck v. Foremost Foods Co., supra, 190 Conn. 672.
The plaintiff had raised defenses the sufficiency of which were dependent on proving that Cadle was not a holder in due course. He knew that Cadle's status as a holder in due course would be an important issue at trial. Nonetheless, there is no proof that he engaged in any pre-trial discovery. There is no evidence that he either served interrogatories, production requests or requests for admission on Cadle; Practice Book §§ 13 6, 13-9, 13-22; or noticed the deposition of Cadle. Practice Book § 13-27. "It is quite clear that the petitioner was fairly put upon inquiry to find this alleged newly-discovered evidence long before trial, and it is a little difficult to CT Page 9640 understand why, during the long period given for preparation, he should not have looked for this evidence where he now claims to have found it after the trial. Such conduct can hardly be said to be reasonable diligence, it cannot even be called diligence."White v. Avery, supra, 81 Conn. 329-30. In fact, the plaintiff did not even ask Mr. Joseph when he was on the witness stand, during the trial of the underlying action, for the information the plaintiff now claims is newly discovered. Joseph's trial testimony, "so far from being `false testimony,' as alleged, appears to have been fair and truthful." Meriden v. Rogers,111 Conn. 115, 117, 149 A. 406 (1930). The plaintiff has not proven that he prepared and tried his case with due diligence.
"The primary test [for determining whether a petition for a new trial should be granted] is whether an injustice was done and whether it is probable that on a new trial different result would be reached. . . . The burden of proving the probability of a different result is upon the plaintiff. . . ." Johnson v. State,172 Conn. 16, 17, 372 A.2d 131 (1976). The plaintiff has not sustained his burden. Based on the record, no injustice has been done. The petition for a new trial is denied.[5]
BY THE COURT
Bruce L. LevinJudge of the Superior Court